838 F.2d 612
 CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Plaintiff, Appellee,
v.
UNIVERSAL INSURANCE COMPANY, et al., Defendants, Appellees.
Hector Manuel Rodriguez-Estrada, Defendant, Appellant.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Plaintiff, Appellant,
v.
UNIVERSAL INSURANCE COMPANY, et al., Defendants, Appellees.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Plaintiff, Appellee,
v.
UNIVERSAL INSURANCE COMPANY, Defendant, Appellant.
 Nos. 87-1521 to 87-1523.
 United States Court of Appeals,
First Circuit.
 Heard Dec. 7, 1987.
Decided Feb. 9, 1988.
 
 Guillermo Silva Janer with whom Silva Janer & Rodriguez Suris, Hato Rey, P.R., was on briefs, for Universal Ins. Co.
 Letvia M. Arza-Goderich, with whom Abelardo Ruiz-Suria, Jose R. Gonzalez-Irizarry and McConnell Valdes Kelley Sifre Griggs & Ruiz-Suria, Hato Rey, P.R., were on briefs, for Connecticut General Life Ins. Co.
 Jose Luis Gonzalez Castaner, with whom Marcos A. Ramirez Irizarry and Ramirez & Ramirez, Hato Rey, P.R., were on briefs, for Hector Manuel Rodriguez-Estrada.
 Luis M. Angelet Frau, with whom Jose M. Calderon Bartolomei and Vazquez Vizcarrondo Alvarez Angelet Lee & Gonzalez, Hato Rey, P.R., were on brief, for appellee Hans Lopez Stubbe.
 Before CAMPBELL, Chief Judge, and BOWNES and SELYA, Circuit Judges.
 BOWNES, Circuit Judge.
 
 
 1
 This case involves a dispute over the proper distribution of insurance proceeds following a fire at the El San Juan Hotel in Isla Verde, Puerto Rico. Connecticut General Life Insurance Company (CG), the mortgagee of the hotel, claims that it was the appropriate beneficiary under a special multi-peril insurance policy issued by Universal Insurance Company (Universal). Universal had paid all the policy proceeds to Hector M. Rodriguez Estrada (Rodriguez) as court-appointed trustee for the hotel corporation, then in chapter 11 reorganization proceedings. CG sued Universal, Rodriguez and Hans Lopez Stubbe (Lopez), a successor trustee for the hotel corporation, now in chapter 7 liquidation proceedings. Universal filed cross-claims against the two trustees. Lopez, in turn, cross-claimed against Rodriguez. The district court found Universal liable to CG in an amount equal to the insurance covering structural damage to the hotel, but not liable for insurance covering loss of contents. The court also upheld Universal's cross-claim against Rodriguez in a like amount; all other claims were dismissed. CG, Universal and Rodriguez all appealed. We affirm in part and reverse in part.
 
 I. BACKGROUND
 
 2
 Following years of financial difficulty and facing some $40 million in outstanding debts, the San Juan Hotel Corporation (hotel corporation or corporation) on May 20, 1980, filed a petition for reorganization under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Secs. 1101-46. On June 18 of the same year, CG, the holder of first, second and third real estate mortgages plus two chattel mortgages encumbering the hotel property, filed an action to foreclose. In order to avoid a foreclosure sale during the period of reorganization, CG and Rodriguez, as trustee for the bankrupt corporation, entered into a stipulation of settlement. Under the stipulation, dated January 8, 1981, Rodriguez consented to the entry of a $13,673,899.75 judgment for CG against the corporation. In return, CG agreed not to initiate a foreclosure sale of the hotel property so long as a number of conditions were met. The particular condition relevant to this case appears in paragraph 3(c):
 
 
 3
 Debtor shall maintain in full force and effect and provide CG with a duplicate original of an insurance policy with an "agreed amount" endorsement, having no coinsurance provisions and naming CG as loss payee and requiring 30 days' notice to CG of any cancellation or modification, insuring the Property in an amount equal to the full amount stated in the Judgment or actual cash value whichever is greater except that if Debtor does not have such policy on the date hereof, it shall comply with this provision on or before January 1, 1981; Debtor shall further provide CG with evidence of payment of the premium for the inital policy and, at least 15 days prior to any expiration date, for each renewal thereof[.]
 
 
 4
 On February 19, 1981, judgment pursuant to the stipulation was entered by the United States Bankruptcy Court in Puerto Rico.
 
 
 5
 Approximately one year after the stipulation was signed, Special Multi-Peril Policy 60-04801 was issued by Universal on January 16, 1982. That policy provided for, inter alia, blanket coverage on all real and personal property at the El San Juan Hotel. The named insured under the policy was "San Juan Hotel Corporation and/or Lcdo. Hector Manuel Rodriguez Estrada, as Trustee as their interest may appear." While CG was listed as loss payee in a temporary binder of insurance, its interest under the actual policy derives solely from its inclusion as a mortgagee on the mortgagee schedule of the policy. Clause 19 of the general conditions of the policy, which defines the interest of a mortgagee, provides in pertinent part:
 
 
 6
 Mortgage Clause--Applicable Only to Buildings. This clause is effective if a mortgagee is named in the Declarations. The word "mortgagee" includes "trustee." Loss to the buildings shall be payable to the named mortgagee as interest may appear, under all present or future mortgages on the buildings described in the Declarations in order of precedence of mortgages on them.
 
 
 7
 On July 17, 1982, fire destroyed the discotheque at the El San Juan Hotel. Immediately thereafter, Rodriguez and Universal entered into negotiations concerning the claim for loss under the policy; neither party ever informed CG of the fire or the negotiations. Eventually, Rodriguez and Universal agreed to a claim for loss to property in the amount of $418,217, which Rodriguez filed on September 27, 1982. The following day Universal issued a check in that amount made payable to "Hector M. Rodriguez Estrada as Trustee of the El San Juan Hotel Corp." No effort was made to safeguard CG's interest in the insurance proceeds. The check was deposited in one of the trustee's operating accounts for the hotel corporation.
 
 
 8
 It was not until November or December of 1982 that CG learned, through a disgruntled former employee at the hotel, of the fire and the insurance payment. After investigating the matter, CG attempted to collect the insurance money from Universal and Rodriguez, as well as from Lopez, who had by then replaced Rodriguez as trustee. Meeting with no success, CG filed this diversity action on October 24, 1983.
 
 
 9
 CG's claim against Universal was for breach of contractual obligations under the insurance policy by failing to pay the loss proceeds to CG. CG also alleged that, by virtue of Rodriguez's breach of the stipulation in failing to notify CG of the fire and in accepting payment which rightly belonged to CG, the funds received by Rodriguez were impressed with a constructive trust. CG thus asserted a cause of action against Lopez in his official capacity for return of the entrusted funds. It also asserted a cause of action against Rodriguez in his personal capacity for "knowingly and wrongfully" collecting the proceeds and for breach of his fiduciary duties under the constructive trust.
 
 
 10
 Universal filed cross-claims against both Rodriguez and Lopez. In the event it was found liable to CG, Universal alleged that it had a right in restitution to recover from Lopez the money erroneously paid to the bankrupt corporation. Additionally, Universal alleged that Rodriguez was personally liable to Universal for any amounts Universal might have to pay CG, because of his knowing violation of the contractual and fiduciary duties owed to CG under the stipulation. Lopez, in turn, filed a cross-claim against Rodriguez, alleging that Rodriguez would be liable to the hotel corporation for any money it might have to pay out, because "any illegal use of [the insurance proceeds] is the personal responsibility of [Rodriguez] which cannot be imputed to [Lopez] nor to debtor's estate."
 
 
 11
 After a one day bench trial, the district court entered judgment for CG against Universal in the amount of $164,000. The court reasoned that Universal was obliged, through the mortgage clause of the policy, to pay CG for the loss "to buildings," but not for the loss to personal property, which comprised the remainder of the $418,217 payment Universal had made to trustee Rodriguez. Universal's payment of the same $164,000 to Rodriguez did not discharge its obligation to CG, the court held. While thus acknowledging that the bankrupt corporation had received money from Universal to which it was not entitled, the district court, "for equitable considerations," disallowed any claims against the corporation. The court found that Universal had been negligent in paying the loss proceeds directly to Rodriguez without safeguarding the interest of CG. Moreover, "the direct malfeasor in the eyes of Universal is Rodriguez," the court stated. As to CG's claim that the funds given to the corporation through Rodriguez were impressed with a constructive trust, the court held: "[E]vidence presented at trial leads us to find that the proceeds from the insurance were commingled with general funds of the estate and cannot be specifically identified."The district court also ruled that Rodriguez could be held personally liable for his deliberate disregard of the stipulation:
 
 
 12
 While we see no error in Rodriguez Estrada filing the proof of loss form, we find his failure to report Connecticut General as a party in interest, and his later failure to forward to plaintiff the payment due to it which had been erroneously paid to him, to be a willful and intentional disregard of his obligation under the stipulation. There is no excuse for such behavior. Therefore, Rodriguez Estrada is ultimately responsible to Universal for that portion of proceeds to which the debtor's estate was not entitled. Art. 1795, Civil Code of Puerto Rico, 31 L.P.R.A. sec. 5121 (1930).
 
 
 13
 In response to Rodriguez's argument that he could not be held personally liable for acts carried out in his official capacity as trustee, the district court cited a number of cases where personal liability had been imposed on bankruptcy trustees for a deliberate violation of fiduciary duties. In a footnote, the court noted that neither CG nor Universal had actually pleaded a cause of action sounding in bankruptcy law, though Lopez had "raised the point superficially." Because of the liberal pleading provisions of the Federal Rules of Civil Procedure, the court found that Rodriguez had sufficient notice of a bankruptcy law-based claim to support the cause of action against him. The court entered judgment for Universal against Rodriguez personally for $164,000, the amount in which Universal was found liable to CG. Without explanation, the court dismissed CG's claim against Rodriguez.
 
 II. UNIVERSAL'S LIABILITY
 
 14
 In the district court, Universal maintained that it was justified in paying the whole of the $418,217 insurance proceeds to Rodriguez, and that it owed nothing to CG. Following the district court's adverse judgment, Universal dropped its defense as to the $164,000 relating to structural damage, and now concedes liability in that amount. The only remaining issue before this court on the CG-Universal dispute is whether Universal also owes another $254,217 to CG for the damage to personal property at the hotel.
 
 
 15
 In support of its claim that it is entitled to the personal property loss proceeds, CG makes two arguments, one substantive and one procedural. Substantively, CG maintains that the mortgage clause of the insurance policy, read in the context of the stipulation and the policy as a whole, provides that Universal should have paid all property loss proceeds to CG. CG emphasizes that the "buildings" referred to in the mortgage clause are the "buildings [as] described in the Declarations." CG then points to certain declarations which describe personal property, alleging that they are the relevant declarations for the mortgage clause.
 
 
 16
 We disagree. First, while the overall policy insures the hotel buildings and their contents, as well as protecting against other losses such as business interruption, the mortgage clause applies "only to buildings." Forms MP-0013 and MP-0014 of the policy illustrate the distinction between buildings and contents, by defining those terms in detail on separate policy documents entitled, respectively, "Special Building Form" and "Special Personal Property Form." To attempt to incorporate items listed on the personal property form into the protection afforded the mortgagee under the mortgage clause would directly contradict the mortgage clause's explicit limitation to buildings.
 
 
 17
 Second, even if we were to find that the mortgage clause is ambiguous as to coverage of personal property, we do not think that the stipulation has any relevance in resolving that ambiguity. Universal was not a party to the stipulation nor was the stipulation incorporated into or referenced by the insurance policy. Indeed, the Universal policy was not procured until over a year after the stipulation was signed. We are aware that, under the stipulation, Rodriguez and the hotel corporation were obliged to obtain insurance protecting CG's full interest in the mortgaged hotel, both buildings and personal property. But to the extent that the insurance policy issued by Universal fails to meet the requirements of the stipulation, the fault lies not with Universal. It lies with Rodriguez, who obtained the policy, and with CG itself, which should have ensured that a policy meeting the requirements of the stipulation was in effect.
 
 
 18
 We also reject CG's related assertion that the district court's interpretation of the mortgage clause is contradicted by the court's factual findings and by the admissions of Universal. To be sure, the district court, in setting out the general background of this case, referred briefly to the insurance policy in question as "meeting the requirements of the [stipulation]." By no means, however, can this offhand reference be said to defeat the court's later, detailed discussion of the mortgage clause, in which it carefully distinguished between coverage for loss to buildings and personal property. The district court's conclusion that the mortgage clause applied only to buildings is unmistakable and is amply supported by the policy provisions. As for Universal, it maintained throughout the proceedings below that it owed nothing to CG under the policy. The fact that Universal also argued, in the alternative, that, should it be found liable to CG, it deserved restitution for any amount erroneously paid to Rodriguez, cannot be taken as any admission of liability on its part.
 
 
 19
 In its procedural argument, CG assigns error to the district court for even considering the issue of whether the $418,217 payment to Rodriguez included compensation for loss to personal property which was not includible under the mortgage clause. The issue of allocation of the payment between buildings and personal property did not emerge until late in trial, during the testimony of Universal's claims adjuster. CG now argues that this testimony, as well as the corresponding portions of the adjuster's report, should not be considered as relevant evidence because it represents a change in the position adopted by Universal in pretrial filings. This argument is not only flawed, but untimely.
 
 
 20
 As noted above, Universal's consistent position before the district court was that it owed nothing to CG: nothing for loss to buildings and nothing for loss to personal property. At trial, both CG and Universal consented to the entry into evidence of Universal's entire claim file on the hotel fire. Included in that file was the "final and closing report" of Luis Morales Morales, Universal's claims adjuster for the loss in question. The report contains detailed calculations of the covered loss at the hotel, and ends with a "summary of acceptable amounts" for a loss claim by Rodriguez:
 
 
 21
 Structural $164,000.00
Content 258,217.00
Business Interruption 138,000.00
Debris Removal 6,000.00
 -----------
 $566,217.00
 
 
 22
 Morales testified at trial as CG's witness. In cross-examining Morales, counsel for Universal inquired about how the $418,217 amount for the payment to Rodriguez was calculated. Morales responded that the check represented coverage for property damage alone, not business interruption; the check was equal to the combined amounts listed in his report for "Structural," "Content" and "Debris Removal," minus the $10,000 deductible amount of the policy. Morales further testified that the "Structural" claim was adjusted to correspond to the MP-0013 "Special Building Form" of the policy and that the "Content" claim was adjusted to correspond to the policy's MP-0014 "Special Personal Property Form."
 
 
 23
 CG never objected to this testimony by Morales. Indeed, CG objected only once during the cross-examination of Morales, to testimony about Morales's interpretation of the mortgage clause, on the ground that Morales was not qualified as an expert.[1] CG never argued to the district court that Universal should not be permitted to explore with Morales the issue of allocation of loss between structure and content, on the ground that it represented an improper change in Universal's pretrial position. CG did not move for a mistrial on that ground. Nor did it ask for a continuance or for extra time for briefing because it was suprised by Morales's testimony. And it did not rebut or impeach either Morales's testimony or his report. "It is by now axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal." Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir.1979). Because it did not make this argument to the district court, CG cannot now rightly complain that Universal impermissibly changed its strategy midstream. Likewise, CG's belated attempt to dispute the $164,000 figure assigned to structural loss--by comparing the adjuster's report to Form MP-0013 of the policy and to provisions of the Civil Code of Puerto Rico--is not properly before us.
 
 
 24
 In order to adjudicate CG's claim to insurance proceeds from the hotel fire, the district court had to interpret the mortgage clause of the policy. The court's conclusion that the clause applied only to loss to building structure was correct. The court therefore necessarily and properly considered the only relevant evidence before it on the issue of how much money was paid by Universal to Rodriguez for structural loss as opposed to personal property loss: the adjuster's report put into evidence by CG and the testimony of CG's own witness. The district court's entry of a $164,000 judgment for CG against Universal is affirmed.
 
 
 25
 CG's request for prejudgment interest and attorney's fees on account of Universal's obstinacy is denied. We find no indication on the record that CG raised this issue before the district court. Moreover, as CG concedes, the relevant Puerto Rico rule "provides that such awards are left to the court's discretion and that, in the case of attorneys' fees and prejudgment interest, the judge must find that the party against whom such award is requested has been obstinate." Heddinger v. Ashford Memorial Community Hosp., 734 F.2d 81, 86 (1st Cir.1984). The district court made no finding of obstinacy and there is nothing in the record to warrant such a finding by us.
 
 III. LOPEZ'S LIABILITY
 
 26
 Both CG and Universal assert claims against Lopez, in his official capacity as trustee for the bankrupt corporation. We first consider CG's claim that it is entitled to a priority claim to the remaining assets of the corporation because the insurance proceeds received by Rodriguez were impressed with a constructive trust. Before getting into the merits of that claim, however, one brief initial point bears discussion. There is no dispute here, as least as between CG and Lopez, that Rodriguez in fact violated the stipulation by failing to notify CG of the fire, by collecting the full insurance proceeds, and by depositing them into a hotel operating account. Lopez thus concedes that CG is entitled to become a general creditor of the hotel corporation to the extent that CG cannot recover from Universal the insurance proceeds to which it was entitled under the stipulation. The only remaining issue is whether CG is entitled to a priority claim to the bankrupt corporation's assets by virtue of a constructive trust. This Lopez denies.
 
 
 27
 When a debtor is in possession of property impressed by a trust--express or constructive--the bankrupt estate holds the property subject to the outstanding interest of the beneficiaries. American Service Co. v. Henderson, 120 F.2d 525, 531 (4th Cir.1941); 4 Collier on Bankruptcy p 541.13, at 541-73 (L. King 15th ed. 1987). In order to establish such a right as trust beneficiary, a claimant must make two showings: first, the claimant must prove the existence and legal source of a trust relationship; second, the claimant must identify the trust fund or property and, where the trust fund has been commingled with general property of the bankrupt, sufficiently trace the property or funds--the res. American Service Co., 120 F.2d at 531; 4 Collier on Bankruptcy, supra, p 541.13, at 541-73 to 74. While the former is usually a question of state law, the latter, because it pertains to distribution of assets from an entity in federal bankruptcy procedings, is exclusively a question of federal law. Matter of Kennedy & Cohen, Inc., 612 F.2d 963, 965-66 (5th Cir.), cert. denied, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980). Here, we need not address whether CG has met its burden in establishing a trust relationship, because we agree with the district court that CG has failed adequately to trace the trust fund res.
 
 
 28
 It is true, as CG asserts, that mere commingling of the trust property with other property of the bankrupt corporation--as occurred here--does not defeat CG's claim. In re Mahan & Rowsey, Inc., 817 F.2d 682, 684 (10th Cir.1987); American Service Co., 120 F.2d at 531; 4 Collier on Bankruptcy, supra, p 541.13, at 541-75 to 76. On the other hand, "[t]here can be no recovery ... where all that can be shown is enrichment of the trustee. [The trust property] must be clearly traced and identified in specific property. It is insufficient to show that trust property went into the general estate and increased the amount and value thereof." In re United Cigar Stores Co., 70 F.2d 313, 316 (2d Cir.1934) (citations omitted).
 
 
 29
 In the present case, CG's efforts to trace the $418,217 insurance payment can be summarized as follows. First, through the financial reports filed by Rodriguez and through the testimony of a CPA who had examined the hotel books, CG established that the hotel corporation had twelve operating accounts and that the insurance check was deposited into one of them on September 30, 1982. Second, CG showed that money from one account was sometimes transferred to another and that the total combined deposits in those accounts, at least between the period of September 1982 and March 1984, never dropped below $287,276. It was also brought out at trial that, after the deposit of the insurance check, the cash in the particular account into which it had been deposited was completely depleted. CG presented evidence to the effect that shortly after the proceeds were deposited into the first account, $390,000 was withdrawn from that account and placed into a certificate of deposit. CG made no effort to specifically trace the $390,000 in the latter account, however, and according to the report prepared by CG's own witness, the hotel corporation's total deposits in certificates of deposit have, since the $390,000 deposit, been as low as $10,573.
 
 
 30
 The normal rule for construing trust proceeds commingled in a bank account is known as the "lowest intermediate balance test." 4 Collier on Bankruptcy, supra, p 541.13, at 541-77. Under that test, set down by the Supreme Court in Schuyler v. Littlefield, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914), and Cunningham v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924), a court will follow the trust fund and decree restitution from an account where the amount on deposit has at all times since the commingling of the funds equaled or exceeded the amount of the trust fund. See 4 Collier on Bankruptcy, supra, p 541.13, at 541-76. Where, however, after the commingling, all the money is withdrawn, the trust fund is treated as lost, even though later deposits are made into the account. Should the amount on deposit be reduced below the amount of the trust fund but not depleted, the claimant is entitled to the lowest intermediate balance in the account. This is based on the fiction that the trustee would withdraw non-trust funds first, retaining as much as possible of the trust fund in the account. See Cunningham, 265 U.S. at 12, 44 S.Ct. at 426.
 
 
 31
 Here, there is no dispute that the lowest intermediate balance in the account into which the insurance proceeds were deposited is zero. CG attempts to overcome the obvious conclusion that it is thus entitled to take nothing by arguing, in essence, that the hotel corporation had not twelve separate bank accounts, but one general "cash-in-banks" account. CG bases this fictional combined bank account on the hotel's financial statements, which list "cash" as a single item. The fact that multiple accounts are consolidated for accounting purposes on a single line of the financial statement does not, of course, mean that they are effectively one account. Nor does it obviate the need for tracing the assets in any particular account. The point of tracing is to follow the particular entrusted assets, not simply to identify some assets. The Second Circuit faced a similar situation in In re United Cigar Stores Co., 70 F.2d 313 (2d Cir.1934). There, the claimant was a joint venturer of the bankrupt and asserted a trust interest in several of the bankrupt's bank accounts. The court rejected the claim, both on grounds that a trust relationship was not proven, and because the trust funds were not traced. On the issue of tracing, the court noted that, while the aggregate balance of the bank accounts had been shown to be above the alleged trust amount at all times, the claimant had failed to trace the specific assets of any particular account, which might well have been depleted at some point. As in United Cigar Stores, CG has not directed this court to any particular asset of the hotel corporation where the alleged trust fund remains, even partially, intact. See also Johnson v. Morris, 175 F.2d 65, 67 (10th Cir.1949) (claimant "must trace his 'property in its original or converted form into specific or identifiable property in the possession of the receiver' ") (citations omitted). CG has shown only a general enrichment of the hotel's accounts. The district court's judgment dismissing CG's claim is affirmed.
 
 
 32
 Universal has also filed a cross-claim against Lopez, as trustee, arguing that it has the right to restitution from the corporation for any money it erroneously paid to Rodriguez. Universal does not specify whether it is asserting a priority claim, as does CG, or whether it simply seeks to become a general creditor. We hold that it is entitled to neither.
 
 
 33
 The only asserted legal basis for Universal's claim against Lopez is section 1795 of the Civil Code of Puerto Rico, which provides:
 
 
 34
 Restitution of thing improperly received. If a thing is received when there was no right to claim it and which, through an error, has been unduly delivered, there arises an obligation to restore the same.
 
 
 35
 P.R. Laws Ann. tit. 31, Sec. 5121. Although the language of the statute would seem to encompass any erroneous payment, the Supreme Court of Puerto Rico, in construing the statute, has consistently limited it to errors of fact, and refused to apply it to errors of law. E.g., Cartagena de Jesus v. Estado Libre Asociado de Puerto Rico, 85 J.T.S. 22 (Mar. 29, 1985); Heirs of Choisne v. Municipality of Vieques, 100 P.R.R. 499, 502 (1972). Here, despite Universal's protestations to the contrary, its payment of the insurance proceeds to Rodriguez was not premised on a mistaken understanding of the facts, but on an erroneous interpretation of the law, and thus is not compensable under section 1795.
 
 
 36
 Universal has not claimed that it was provided with erroneous information in settling the claim from the hotel fire or that it was unaware that CG had an interest in the policy. Indeed, Universal's claims adjuster testified at trial that he had reviewed the policy, including the mortgagee clause and schedule, and had noted that CG was listed as mortgagee. The reason he accepted a proof of loss which did not protect CG's interest, and the reason that he authorized payment to Rodriguez, was also stated: "Because it was my clear understanding that Mr. Rodriguez Estrada was acting on behalf of all the creditors." The claims adjuster's handling of the case was based on a legal misunderstanding relating to the representative capacity of a bankruptcy trustee. Universal nowhere proved that the legal misunderstanding arose out of some incorrect factual information provided to it by Rodriguez--or anyone else, for that matter.
 
 
 37
 In Cartagena de Jesus, 85 J.T.S. 22, a recipient under a Puerto Rico program for nutritional aid informed the administering agency that she had two granddaughters living with her and that their mother provided eighty dollars monthly for food. Based on that information--which was never disputed--the agency increased the recipient's monthly benefits. Later, however, the agency determined that the increase had been erroneously authorized because of an agency policy of not separating minors from their parents. The agency then demanded that the recipient return the money that she had erroneously received for five months. The Supreme Court of Puerto Rico rejected that claim. The court noted that the agency had always had before it the correct factual information relating to the recipient's eligibility, but had made a determination contrary to its own regulations. Section 1795 is inapplicable to such a mistake, the court said. Likewise, here, Universal had all the pertinent facts before it when it handled the fire loss claim, yet it paid the the entire proceeds to Rodriguez because it believed he legally represented the interests of CG. The district court's dismissal of Universal's cross-claim is affirmed.
 
 IV. RODRIGUEZ'S LIABILITY
 
 38
 Rodriguez faces personal liability claims by CG and Universal for his handling of the claim for fire loss at the hotel. In the district court, Lopez also asserted a cross-claim against Rodriguez, seeking reimbursement in the event he were found liable to Universal or to CG. The district court found that Lopez was not liable and dismissed Lopez's cross-claim. On appeal, Lopez has not pressed his cross-claim and, in view of the fact that we have affirmed the district court's decision with respect to Lopez's liability, we do not consider it.
 
 
 39
 Rodriguez raises two general defenses to his personal liability. First, he argues that he cannot be held personally liable because all of his actions relevant to this action were carried out in his official capacity as trustee. Second, he argues that, even if he could be held personally liable for deliberate violations of his fiduciary duties, there is insufficient evidence in the record to support the district court's finding in that respect. We find neither claim persuasive.
 
 
 40
 As to Rodriguez's first argument, the law is directly to the contrary. In Mosser v. Darrow, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951), the Supreme Court held that a bankruptcy trustee could be held personally liable for permitting two employees to trade on inside information. The Court noted:
 
 
 41
 Courts are quite likely to protect trustees against heavy liabilities for disinterested mistakes in business judgment. But a trusteeship is serious business and is not to be undertaken lightly or so discharged. The most effective sanction for good administration is personal liability for the consequences of forbidden acts....
 
 
 42
 Id. at 274, 71 S.Ct. at 683. Building on Mosser, federal courts have uniformly held that bankruptcy trustees are subject to personal liability for the willful and deliberate violation of their fiduciary duties. E.g., In re Gorski, 766 F.2d 723, 727 (2d Cir.1985); In re Cochise College Park, Inc., 703 F.2d 1339, 1357 (9th Cir.1983); Ford Motor Credit Co. v. Weaver, 680 F.2d 451, 461 (6th Cir.1982); Sherr v. Winkler, 552 F.2d 1367, 1375 (10th Cir.1977). Some courts have even held that personal liability can be imposed for negligent acts by a trustee, at least where discretionary judgments are not involved. E.g., Gorski, 766 F.2d at 727; Cochise College Park, 703 F.2d at 1357 & n. 26.
 
 
 43
 Rodriguez's argument concerning evidence to support the district court's finding of deliberateness centers on the court's judicial notice of a related district court proceeding in which Rodriguez was found personally liable to the bankrupt hotel corporation for deliberate violations of his fiduciary duties. See In re San Juan Hotel Corp., 71 B.R. 413 (D.P.R.1987). Characterizing the district court's action as an offensive use of collateral estoppel, Rodriguez cites numerous cases to support his contention that this is not a proper subject for judicial notice under Federal Rule of Evidence 201. This argument misses the point. As the district court's opinion makes clear, the finding of "willful and intentional disregard" of Rodriguez's trustee duties was not based solely, or even predominantly, on the prior case. Rather, the district court based its finding on the following: despite the fact that Rodriguez negotiated the stipulation and thus knew its provisions, he never notified CG of the fire, he never reported CG as a party in interest when filing the proof of loss, and he never forwarded to CG the payment which it was due. The district court's finding of deliberateness is a factual determination which we review under the clearly erroneous standard of Federal Rule of Civil Procedure 52(a). Even assuming that the judicial notice was improper, we find that there is ample circumstantial evidence on the record--independent of the judicially-noticed prior case--to support the district court's determination.
 
 
 44
 With respect to CG's claim, Rodriguez raises an additional defense: he argues that a cause of action arising out of his fiduciary duties as a bankruptcy trustee was never properly pleaded in the district court. Having reviewed the record from the district court, we conclude that this argument must be rejected. CG's complaint in this action set out the basic facts underlying the dispute over the insurance proceeds and asserted two causes of action against Rodriguez: one for knowingly and wrongfully collecting the insurance proceeds in violation of his obligations under the stipulation, and one for violation of his fiduciary duties under a constructive trust impressed on the proceeds. Rodriguez is thus technically correct when he argues that CG never explicitly identified the legal theory of Mosser and its progeny as a ground for recovery. But, as the district court noted, modern federal pleading practice does not demand so precise a statement.
 
 
 45
 "Under Rule 8 [of the Federal Rules of Civil Procedure], a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. It is not necessary to set out the legal theory on which the claim is based." Siegelman v. Cunard White Star Ltd., 221 F.2d 189, 196 (2d Cir.1955) (Harlan, J.); see also Gins v. Mauser Plumbing Supply Co., 148 F.2d 974, 976 (2d Cir.1945) ("particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not"); 2A J. Moore & J. Lucas, Moore's Federal Practice p 8.14 (1987). Here, at least with respect to Universal's claim, the district court ruled that the bankruptcy law issues were sufficiently implicated by the pleadings and evidence to support a judgment against Rodriguez personally. We agree. In its complaint, CG alleged that Rodriguez knowingly violated both the terms of the stipulation and the fiduciary duties owed to CG. It is precisely those allegations--eventually found as conclusions of fact and law by the district court--which entitle CG to prevail under the Mosser line of cases. That CG did not plead this particular legal theory, when it did plead two related theories, will not be a bar to recovery. See Janke Construction Co. v. Vulcan Materials Co., 527 F.2d 772, 776 (7th Cir.1976) ("We concur with the District Court that the fact that [plaintiff] misconceived the legal theory of his case does not preclude it from obtaining relief under another theory."). Rodriguez had every reason to know that his fiduciary duties as bankruptcy trustee would be an issue in the case and, indeed, he raised provisions of the bankruptcy code as a defense.
 
 
 46
 Having made the necessary factual and legal findings to support CG's claim against Rodriguez, the district court nevertheless dismissed CG's complaint against Rodriguez. That decision is reversed, and judgment is entered for CG against Rodriguez individually for $418,217, the full amount of the insurance proceeds relating to property damage which should have been paid to CG under the stipulation.[2] Rodriguez is jointly liable with Universal for the $164,000 in structural loss proceeds and solely liable for the $254,217 in personal property loss proceeds.
 
 
 47
 Universal's cross-claim against Rodriguez stands on different footing. Rodriguez admittedly owed fiduciary duties to CG as a creditor and contractual duties to CG under the stipulation, but Universal is not a party to the stipulation and has not alleged a fiduciary relationship. Contrary to the district court's conclusion, therefore, Universal does not have a bankruptcy law-based claim against Rodriguez in his personal capacity. Such a claim is contingent upon the existence of a fiduciary relationship. Universal tries to avoid this conclusion by pointing to the permissive cross-claim provisions of Rule 13(g) and by bootstrapping the duties that Rodriguez owed to CG. Universal characterizes its claim not as a "separate and independent action between co-parties," but as a "contingent remedy requested on the basis of the result in the original complaint filed." Apparently, Universal believes that it is entitled to contribution or indemnity from Rodriguez for Universal's liability to CG, on account of Rodriguez's violation of duties owed to CG. But Rule 13(g) is not a general provision for indemnity or contribution. It is purely a procedural device for facilitating affirmative claims for relief among co-parties to a lawsuit. See 3 J. Moore, Moore's Federal Practice p 13.34, at 13-213 n. 11 (1987); 6 C. Wright & A Miller, Federal Practice & Procedure Sec. 1431, at 162 (1971). The pleading requirements of Rule 8(a) apply to Rule 13(g) cross-claims, which must "contain ... a short and plain statement ... showing that the pleader is entitled to relief." See Washington Building Realty Corp. v. Peoples Drug Stores, Inc., 161 F.2d 879, 880 (D.C.Cir.1947); Paur v. Crookston Marine, Inc., 83 F.R.D. 466, 471 (D.N.D.1979). Universal has not pointed to any substantive legal basis for contribution or indemnity, and it has not and cannot assert that it has a cause of action against Rodriguez under the bankruptcy laws. Its cross-claim must fail.
 
 
 48
 In finding for Universal on its cross-claim, the district court referred to section 1795 of the Civil Code of Puerto Rico. Universal now endorses the district court's ruling by arguing that it is indeed entitled to "restitution" under section 1795. This argument is rejected on two grounds. First, as already discussed, section 1795 applies only to payments made because of a mistake of fact, not because of a mistake of law, like that involved here. Second, there is no evidence that Rodriguez personally received any of the insurance proceeds. He has not been unjustly enriched and cannot be held to make restitution for something that he never received. The district court's judgment for Universal is reversed and Universal's cross-claim against Rodriguez is dismissed.
 
 
 49
 Reaching an issue never raised by any of the parties, the district court also held that any personal liability imposed on Rodriguez is "not dischargeable in bankruptcy." The district court was apparently concerned that Rodriguez would declare bankruptcy and seek to avoid the financial consequences of his malfeasance as a trustee. Rodriguez argues that the district court erred in this respect, and we agree. The Rules of Bankruptcy Procedure provide that dischargeability is a question to be raised before a bankruptcy court only after bankruptcy proceedings have been initiated. Bankr. Rules 4004-08. At that time, a discharge "shall" be granted to individual debtors unless an objection is filed or the debtor waives the discharge. Bankr. Rule 4004(c). And the objector carries the burden of proof. Bankr. Rule 4005. Because Rodriguez has not filed for bankruptcy, the district court's decision regarding discharge is premature and must be vacated.
 
 V. SUMMARY
 
 50
 The district court's judgment for CG against Universal for $164,000 is affirmed. Judgment is also entered for CG against Rodriguez individually for $418,217. Rodriguez is jointly liable with Universal for $164,000 and is solely liable for $254,217. The determination that Rodriguez's debt is not dischargeable is vacated. The district court's judgment against Rodriguez on Universal's cross-claim is reversed. All other claims are dismissed. CG's request for prejudgment interest and attorney's fees because of Universal's obstinacy is denied.
 
 
 51
 No costs on appeal.
 
 
 52
 So ordered.
 
 
 
 [1]
 The testimony was allowed over the objection, on the ground that the district court would have to make its own, independent legal assessment of the mortgage clause
 
 
 [2]
 Having found for CG on the basis of federal bankruptcy law, we do not address any possible cause of action based on Puerto Rico state law. We, therefore, also do not address Rodriguez's argument that a state law-based claim was time-barred under the applicable Puerto Rico statute of limitations