**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: THOMAS H. DAMERON, t/a St.
Asaph Lawyers Title Company,
Incorporated, t/a Beneficial
Settlement Services, Incorporated,
t/a Choice Settlement Services,
Incorporated; MID-ATLANTIC TITLE &
ESCROW SERVICES, INCORPORATED;
HILL MANAGEMENT & INVESTMENT,
LIMITED; INWOOD CENTER
ASSOCIATES; SYLVAN GROVE WASTE
TREATMENT, INCORPORATED,
Debtors.

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY; CHEMICAL

RESIDENTIAL MORTGAGE COMPANY,
Plaintiffs-Appellees,

and

MORTGAGE ACCESS CORPORATION,
Plaintiff,

v.

ROBERT O. TYLER, Trustee,
Defendant-Appellant,

and

RICHARD S. MENDELSON; MID-
ATLANTIC TITLE & ESCROW SERVICES,
INCORPORATED; BURKE & HERBERT
BANK & TRUST COMPANY,
Defendants.

No. 97-2402

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-97-976-A, BK-96-10873-DOT, AP-96-1083)

Argued: June 5, 1998

Decided: September 24, 1998

Before MURNAGHAN and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Michael and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Robert Terrence Ney, MCGUIRE, WOODS, BATTLE &
BOOTHE, L.L.P., McLean, Virginia, for Appellant. Brian F. Kenney,
MILES & STOCKBRIDGE, P.C., McLean, Virginia, for Appellees.
**ON BRIEF:** James M. Lewis, Robert R. Vieth, MCGUIRE,
WOODS, BATTLE & BOOTHE, L.L.P., McLean, Virginia; Made-
line A. Trainor, TYLER, BARTL, BURKE & ALBERT, Alexandria,
Virginia, for Appellant. David J. Ervin, MILES & STOCKBRIDGE,
P.C., McLean, Virginia, for Appellees.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Appellant, bankruptcy trustee Robert O. Tyler (Trustee), appeals
the district court's grant of summary judgment to the Appellees, Old
Republic National Title Insurance Co. (Old Republic) and Chemical
Residential Mortgage Co. (Chemical), in an adversary proceeding
commenced by those parties to recover from the bankruptcy estate

2

funds they claim were misappropriated by the debtor. Because we agree that summary judgment was proper, we affirm.

I.

The debtor, Thomas H. Dameron, is a former member of the Virginia bar who conducted residential real estate settlements through his company, Mid-Atlantic Title & Escrow Services, Inc. (Mid-Atlantic). In the course of that business, Dameron received funds from various lenders to be held for disbursement to designated third parties following closings. Dameron held such funds in his general corporate account at Burke & Herbert Bank & Trust Co. (B&H).

Four transactions conducted by Dameron are relevant to this appeal. On January 25, 1996, Dameron received $71,475.40 from Shelter Mortgage Corp. (Shelter) for use in the Browning settlement.[1] Four days later, Dameron received $41,619.20 from Mortgage Access Corp. (Mortgage Access) for use in the Hedayaty settlement and $180,749.82 from Chemical for use in the Ruffin settlement.[2] Finally, on January 31, 1996, Dameron received another $164,807.10 from Chemical for use in the Abercrombie settlement. [3]

Early in 1996, the Virginia State Bar received information indicating that Dameron was misappropriating settlement funds. The State Bar commenced an action against Dameron in the Circuit Court for the City of Alexandria, Virginia, and the court appointed a receiver for Dameron and froze his personal and corporate assets, including

_____

[1] Shelter's closing instructions to Dameron stated as follows: "Settlement of this loan is to be completed in FULL ACCORDANCE with these instructions. . . . If any of the aforementioned conditions cannot be met, you may NOT settle the loan or disburse our closing funds."
[2] Mortgage Access's closing instructions to Dameron stated as follows: "NO FUNDS MAY BE DISBURSED UNTIL ALL CLOSING CONDITIONS HAVE BEEN COMPLIED WITH." Chemical's instructions stated similarly: "You may not cash, deposit or disburse our funds until you have fully complied with all instructions."
[3] Chemical's closing instructions stated as follows: "You may not cash, deposit or disburse our funds until you have fully complied with all instructions."

his account at B&H. On February 23, 1996, various individual claimants[4] (collectively, Lenders) filed an involuntary Chapter 11 petition against Dameron and Mid-Atlantic, claiming to be creditors in the amount of $458,652, and commenced an adversary proceeding to recover their share of Dameron's frozen account. As of the petition date, the account contained $453,338.47.

In the consolidated adversary proceeding, the Lenders moved for summary judgment and the Trustee filed a cross-motion for summary judgment. The bankruptcy court, Judge Tice, denied the Trustee's motion but granted the Lenders' motion on the grounds that they are entitled to an express or constructive trust over their share of Dameron's bank account. The Trustee appealed that decision to the district court, which affirmed the grant of summary judgment to the Lenders. This appeal followed.

II.

The Trustee contends that the district court erred in granting summary judgment to the Lenders on the ground that they were entitled to an express or constructive trust over a portion of Dameron's bank account. We review de novo the district court's decision to grant summary judgment to the Lenders. See M&M Med. Supplies & Servs. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992) (en banc). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); M&M, 981 F.2d at 162-63.

Under the Bankruptcy Code, a trustee is entitled to distribute all property within the scope of the bankruptcy estate. The Code defines the scope of such property broadly, including within the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Expressly excluded from the estate is any "[p]roperty in which the debtor holds, as of the

_____

**4** Old Republic issued insured closing letters to Chemical, Shelter, and Mortgage Access in connection with the four settlements at issue. When called upon to do so, Old Republic paid Shelter and Mortgage Access -- but not Chemical -- for their losses and thereby became subrogated to their rights in the funds.

commencement of the case, only legal title and not an equitable interest . . . ." 11 U.S.C. § 541(d). We have previously explained that the purpose of § 541(d)'s exclusion is to ensure that the trustee "take no greater rights [in the property] than the debtor himself had." Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co. , 790 F.2d 1121, 1124 (4th Cir. 1986) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.C.C.A.N. 5787, 5868). Therefore, when a "debtor does not own an equitable interest in property he holds in trust for another, that interest is not `property of the estate'" for purposes of the Bankruptcy Code. Begier v. IRS, 496 U.S. 53, 59 (1990).

Our consideration of what constitutes an "equitable interest" subject to exclusion from the bankruptcy estate under§ 541(d) is a question of state law. See Butner v. United States , 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law . . . [u]nless some federal interest requires a different result . . . ."); Barnhill v. Johnson, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, `property' and `interests in property' are creatures of state law."); American Bankers Ins. Co. v. Maness , 101 F.3d 358, 363 (4th Cir. 1996) ("[W]hile federal law creates the bankruptcy estate, Butner and the cases following it establish that state law, absent a countervailing federal interest, determines whether a given property falls within this federal framework."). Therefore, in the present case, we must first decide whether, in light of Virginia law, the Lenders are entitled to a trust over some portion of Dameron's account.

Virginia law recognizes three basic forms of trust. See Leonard v. Counts, 272 S.E.2d 190, 194-95 (Va. 1980) (discussing express, constructive, and resulting trusts). Of these, the two that are potentially relevant to the instant case are the express (or actual) trust and the constructive trust. An express trust is created when the parties affirmatively manifest an intention that certain property be held in trust for the benefit of a third party. See Peal v. Luther, 97 S.E.2d 668, 669 (Va. 1957); Broaddus v. Gresham, 26 S.E.2d 33, 35 (Va. 1943). An express trust may be created "without the use of technical words." Broaddus, 26 S.E.2d at 35. All that is necessary are words, see id. at 35 (citation omitted), or circumstances, see Woods v. Stull, 30 S.E.2d 675, 682 (Va. 1944) (citation omitted), "which unequivocally show an intention that the legal estate was vested in one person, to be held in some manner or for some purpose on behalf of another. . .,"

5

Broaddus, 26 S.E.2d at 35; see also Schloss v. Powell, 93 F.2d 518, 519 (4th Cir. 1938). In contrast to an express trust, a constructive trust "arise[s] by operation of law, independently of the intention of the parties . . . ." Crestar Bank v. Williams, 462 S.E.2d 333, 335 (Va. 1995) (citation omitted). Such trusts "occur not only where the property has been acquired by a fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained . . . ." Leonard, 272 S.E.2d at 194-95 (citation omitted). With either form of trust, Virginia law recognizes the beneficiary as "equitable owner of the trust property." Broaddus, 26 S.E.2d at 36 (quoting Austin W. Scott, Scott on Trusts § 12.1, at 86).

In the case at bar, the Lenders maintain that the parties created an express trust in Dameron to hold the Lenders' funds for the benefit of specified third parties. They point out that, pursuant to the plain language of their closing instructions, Dameron was to hold the funds, essentially as an escrow, for disbursement after closing. That arrangement, they contend, is the very definition of an express trust.

We agree. The language of the parties' agreements and the circumstances under which the Lenders advanced their funds to Dameron leave no doubt that the parties intended Dameron to act merely as an intermediary. There was plainly no expectation that Dameron would keep the Lenders' funds after closing or that he would develop any equitable interest in the funds. In fact, under Virginia law, a trust fiduciary is prohibited from acquiring an equitable interest in trust property adverse to his principal. See Greenspan v. Osheroff, 351 S.E.2d 28, 37 (Va. 1986) ("It is well settled that where one person sustains a fiduciary relation to another he can not acquire an interest in the subject matter of the relationship adverse to such other party.") (quoting Horne v. Holley, 188 S.E.2d 169, 172 (Va. 1936)). Therefore, under Virginia law and the law of trusts generally, we have no doubt that an express trust was created. See Restatement (Second) of Trusts § 32 cmt. d. ("Where the owner of property delivers in escrow the subject matter or instrument of transfer, manifesting an intention that upon the happening of a certain event the depositee should deliver the subject matter or the instrument to a third person as trustee, and the owner does not reserve a power of revocation, a trust is created at the time of the delivery in escrow."). In light of that conclusion and the

6

plain language of § 541(d), the district court was correct to hold that the Lenders' funds are beyond the reach of the bankruptcy estate. See United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.10 (1983) ("We note . . . that Congress plainly excluded[from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the petition."); In re Omegas Group, Inc., 16 F.3d 1443, 1449 (6th Cir. 1994) ("A debtor that served prior to bankruptcy as trustee of an express trust generally has no right to the assets kept in trust . . . ."); Gulf Petroleum v. Collazo , 316 F.2d 257, 261 (1st Cir. 1963) ("Courts of bankruptcy recognize that money held in escrow is not property which vests in the trustee . . . since the bankrupt in such a case, and subsequently his trustee, is to be regarded as holding the so-called escrowed funds in trust under the terms of the agreement and not for the general creditors . . . ."); American Service Co. v. Henderson, 120 F.2d 525, 530 (4th Cir. 1941) ("The rule is elementary that a trustee . . . succeeds to only the title and rights in property that the particular debtor had . . . .).**5**

The Trustee argues that the intended beneficiaries, rather than the trustors, are the proper plaintiffs to sue for disgorgement of the trust property. We disagree. An escrow arrangement, like all express trusts, is a contractual relationship, in which disbursement by the trustee is conditioned upon the happening of a specified occurrence. See Winslow, Inc. v. Scaife, 254 S.E.2d 58, 60 (Va. 1979) ("The depository of an escrow is, in fact, the agent of both parties. As the agent of the grantor it is his business to withhold the[trust property] until the condition is performed; as the agent of the grantee it is his business to hold it for him and to deliver it to him after the condition is performed.") (citation omitted). It is, therefore, elementary that when trust conditions are not satisfied the trustee has a duty to return the property to the trustor. See Gulf Petroleum, 316 F.2d at 261 ("[The trustee] must be held to have received the [funds] in trust and to have assumed the fiduciary duty of holding them intact and returning them to [the trustor] if, as happened, the closing under the contract was prevented from taking place . . . .") (citations omitted). In the present

_____

**5** Because we conclude that the parties intended to create an express trust, we have no occasion to address the district court's alternative holding that the Lenders are entitled to recover under a theory of constructive trust.

7

case, the parties' agreements expressly provided that disbursement of the Lenders' funds was authorized only if all conditions of settlement were satisfied. Because those conditions were not met, Dameron had a fiduciary duty to return the trust property to the Lenders.**6**

In light of the discussion thus far, the sole remaining issue is whether the Lenders can adequately trace their assets into Dameron's frozen bank account. Ordinarily, a party claiming entitlement to a trust must be able to trace its assets into the fund or property that is the subject of the trust. See In re United Cigar Stores Co., 70 F.2d 313, 316 (2d Cir. 1934) (citations omitted) ("There can be no recovery . . . where all that can be shown is enrichment of the trustee. [The trust property] must be clearly traced and identified in specific property."). Although this Court has not previously addressed the issue, other courts have held, and we agree, that tracing is an issue of federal rather than state law. See Conn. Gen. Life Ins. v. Universal Ins. Co., 838 F.2d 612, 618-19 (1st Cir. 1988) ("[B]ecause it pertains to distribution of assets from an entity in federal bankruptcy proceedings, [tracing] is exclusively a question of federal law."); Matter of Kennedy & Cohen, Inc., 612 963, 966 (5th Cir. 1980) (same).

In the present case, the Trustee argues that tracing is impossible, since it is undisputed that Dameron commingled the Lenders' funds in his general corporate account. We find that argument to be without merit, since courts have consistently rejected the notion that commingling of trust property, without more, is sufficient to defeat tracing. See, e.g., Chiu v. Wong, 16 F.3d 306, 310 (8th Cir. 1994); Conn. Gen. Life, 838 F.2d at 619. In cases where the trust property has been commingled, courts resolve the issue with reference to the so-called "lowest intermediate balance" rule, see Schuyler v. Littlefield, 232 U.S. 707 (1914); Cunningham v. Brown, 265 U.S. 1 (1924); Conn. Gen. Life, 838 F.2d at 619 (citing 4 Collier on Bankruptcy 541-77 (L. King 15th ed. 1987)); 5 A. Scott & W. Fratcher, The Law of Trusts 634-36 (4th ed. 1989); Restatement (Second) of Trusts § 202 cmt. j (1959), which is grounded in the fiction that, when faced with the need to withdraw funds from a commingled account, the trustee withdraws

---

**6** Of course, to prevent double recovery, the Lenders must now relinquish any deeds of trust they received over the subject properties in return for their loans.

8

non-trust funds first, thus maintaining as much of the trust's funds as possible. Hence, pursuant to the lowest intermediate balance rule, if the amount on deposit in the commingled fund has at all times equaled or exceeded the amount of the trust, the trust's funds will be returned in their full amount. See Conn. Gen. Life, 838 F.2d at 619. Conversely, if the commingled fund has been depleted entirely, the trust is considered lost. See id. Finally, if the commingled fund has been reduced "below the level of the trust fund but not depleted, the claimant is entitled to the lowest intermediate balance in the account." Id.; Cunningham, 265 U.S. at 12. In no case is the trust permitted to be replenished by deposits made subsequent to the lowest intermediate balance. See Conn. Gen. Life, 838 F.2d at 619.

In the present case, at the time of the bankruptcy filing, the balance of Dameron's account was $453,338.47. The Lenders claim entitlement to a trust in the amount of $458,651.52. Because the account has been reduced below that amount but not depleted entirely, the Lenders are entitled to the lowest intermediate balance, without the benefit of any deposits made after such balance was reached.

Based on the uncontroverted affidavit of Charles P. Cocke, a Certified Public Account, the district court accepted the following facts with regards to Dameron's account:

> 1. On January 25, 1996, Shelter[7] deposited $71,475.40 into the account for the Browning settlement. By January 29, 1996, various unrelated withdrawals created a deficit in the account in the amount of $5,313.05. Because Shelter was the only lender with funds then in the account, the court presumed, based on the lowest intermediate balance rule, that the withdrawals depleted Dameron's own funds first and that Shelter's funds were withdrawn only to the extent necessary to cover any remaining deficit. Therefore, Shelter's funds were reduced by $5,313.05, leaving Shelter with a lowest intermediate balance of $66,162.35.

_____

[7] Recall that Old Republic has been substituted in these proceedings for Shelter and Mortgage Access.

2. On January 29, 1996, Mortgage Access transferred into the account $41,619.20 for the Hedayaty Settlement. Because those funds were subjected to no subsequent withdrawals, Mortgage Access has a lowest intermediate balance of $41,619.20.

3. On January 29, 1996, Chemical transferred into the account $180,749.82 for the Ruffin Settlement. Chemical later transferred another $164,807.10 in connection with the Abercrombie Settlement. Because the account was subjected to no subsequent withdrawals, Chemical's lowest intermediate balance is $345,556.92.

In the lower courts, the Trustee presented no affidavits to contradict Cocke's analysis. Therefore, because no genuine issue of material fact remains, summary judgment was appropriately granted to the Lenders.

The judgment of the district court is, therefore,

AFFIRMED.

10