# UNITED STATES COURT OF APPEALS
# FIFTH CIRCUIT

———————————

No. 00-50358

(Summary Calendar)

———————————

In The Matter Of: VAUGHN MOTORS, INC.

Debtor.

TEXAS COMPTROLLER OF PUBLIC ACCOUNTS,

Appellee,

versus

JIM WEATHERS,

Appellant.

———————————

Appeal from the United States District Court
For the Western District of Texas, San Antonio
SA-98-CV-595

———————————

January 25, 2001

Before EMILIO M. GARZA, STEWART and PARKER, Circuit Judges.

PER CURIAM:[*]

———————————

[*] Pursuant to Fifth Circuit Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit

Jim Weathers ("Weathers") appeals the district court's application of the lowest intermediate balance rule in apportioning among the creditors the commingled account held by the debtor, Vaughan Motors, Inc. ("Vaughan Motors"). We affirm.

Vaughan Motors acquired and resold used vehicles in Kerrville, Texas. It operated by entering into contracts with outside investors who financed the wholesale purchase of used vehicles. Sometimes, Vaughan Motors would finance the purchase itself. When Vaughan Motors resold a vehicle, it would receive a cash down-payment and a promissory note (referred to as a contract). It would then forward the contract, along with the down-payment as well as subsequent payments, to the investor(s) who had financed that particular car. Vaughan Motors made its profit by receiving a percentage of those payments. One of the outside investors was Weathers.

Vaughan Motors began encountering financial difficulties. As a result, it stopped forwarding payments to its outside investors, and instead used them to keep its business afloat. Eventually, Vaughan Motors filed for Chapter 11 bankruptcy on May 1, 1996. At the time it filed its bankruptcy petition, it had about 25 outstanding contracts with outside investors. In addition to failing to make these payments, Vaughan Motors apparently did not pay sales taxes on its vehicles. The Texas Comptroller of Public Accounts ("Comptroller") filed a state tax lien against Vaughan Motor's assets on November 21, 1995.

As a Chapter 11 debtor, Vaughan Motors continued to receive payments for the outstanding contracts. But it failed to segregate the contract payments owed to each outside investor, and instead commingled them in its account. It also continued using these payments for its own operations. The Comptroller informed Vaughan Motors on May 6, 1996 that it had a perfected lien against all of the

Rule 47.5.4.

company's assets, and ordered it not to use its cash collateral.

About two weeks later, Weathers filed a motion to prevent Vaughan Motors from using his cash collateral under 11 U.S.C. § 363. On July 18, 1996, Weathers signed an agreement ("Segregation Agreement") to reset the hearing on its motion on the condition that Vaughan Motors segregate the payments it received on his contracts. Despite this agreement, it failed to do so. A bankruptcy court finally barred Vaughan Motors from using any of the commingled funds, and ordered it, to no avail, to segregate Weather's funds. Vaughan Motors' Chapter 11 bankruptcy proceeding was ultimately converted into a Chapter 7 liquidation process in August.

Weathers filed suit against Vaughan Motors in bankruptcy court to recover his owed payments of $59,903.16. The Comptroller intervened to protect its interests of $119,704.06 in unpaid state sales taxes. Morgan Trust, another outside investor, similarly intervened. About $66,000 remained in the commingled account. The bankruptcy court directly traced and awarded $34,427.88 to Weathers: $8,691.32 was from the funds received by Vaughan Motors on his contracts from the Segregation Agreement until the Chapter 7 conversion; another $25,736.56 came from the funds received on his contracts after the conversion. The bankruptcy court then equally divided the remaining untraceable $32,837.05 among the three creditors.

The Comptroller appealed to the district court, which reversed the $8,691.32 awarded to Weathers, and the equal division of the remaining $32,837.05.[1] The district court held that the bankruptcy court improperly used its equitable powers to trace the $8,691.32 to Weathers. Instead, the bankruptcy court should have applied the lowest intermediate balance rule, which states that only the lowest balance amount in the commingled account is recoverable. This rule would have reduced

---

[1] The Comptroller did not contest the $25,736.56 traceable to Weathers.

Weathers' recovery to $20.63 in regards to the disputed $8,691.32 amount. Furthermore, the district court held that the Comptroller had a priority claim as to the remaining untraceable amount because of its perfected state tax lien. Given that its claim of $119,704.06 exceeded the remaining funds in the commingled account, Comptroller was entitled to the entire untraceable amount. The district court, however, noted that the bankruptcy court did not make any findings about the validity of the Comptroller's tax lien, and thus remanded it to determine if the tax lien notice complied with the § 113.001 *et seq.* of the Texas Tax Code and if the tax claim is entitled to priority under § 726 of the Bankruptcy Code.

We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *See Matter of Crowell*, 138 F.3d 1031, 1033 (5th Cir. 1998) (holding that we review the district court's decision under the same standard as it would review a bankruptcy court's order).

We hold that the district court correctly applied the lowest intermediate balance rule in determining how much of Weathers' contract payments deposited into Vaughan Motor's account during the period between the Segregation Agreement and the Chapter 7 conversion could be recovered.

As a preliminary manner, we note that the district court properly held that the bankruptcy court had implicitly impressed a constructive trust upon Vaughan Motor when it failed to segregate contract payments owed to Weathers, as required by the Segregation Agreement and the court order. *See In the Matter of Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir. 1980) (holding that a court will establish a constructive trust if there has been "some wrongdoing on the bankrupt's part either in [o]btaining the funds sought or in [r]etaining them.") Put another way, the trust funds held by Vaughan Motor for the benefit of Weathers are not part of the of the bankruptcy estate and thus not

-4-

subject to the Comptroller's tax lien.  *See* 11 U.S.C. § 541(d).

Thus, the main question posed here is whether the district court correctly determined the amount of commingled funds that was impressed to this constructive trust.  Courts generally apply the lowest intermediate balance rule when trust proceeds are commingled with non-trust proceeds in a debtor's account.  *See, e.g., Conn. General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir. 1988); *In re Mahan & Rowsey, Inc.*, 817 F.2d 682 (10th Cir. 1987); *In re Thomas H. Dameron*, 155 F.3d 718 (4th Cir. 1998); *In the Matter of Al Copeland Enter.*, 991 F.2d 233 (5th Cir. 1993); *In re United States Lines, Inc.*, 79 B.R. 542 (Bankr. S.D.N.Y. 1987).  The rule states that when a trust beneficiary's funds, despite being traceable into the debtor's account, are "commingled in accounts that were drawn upon, the trust beneficiary's recovery [is] limited to the lowest balance between the time of deposit of the overpayments and the filing of the [bankruptcy] petition."  *In re Mahan & Rowsey, Inc.*, 817 F.2d at 683-84.  The rule is intended to allow a trustee beneficiary to trace properly his funds in a commingled account.  It is "grounded in the fiction that, when faced with the need to withdraw funds from a commingled account, the trustee withdraws non-trust funds first, thus maintaining as much of the trust's funds as possible." *In re Dameron*, 155 F.3d at 724 (citations omitted).  This rule, however, cuts both ways: if the commingled fund has been reduced "below the level of the trust fund but not depleted, the claimant is entitled to the lowest intermediate balance in the account." *Id.* (quoting *Cunningham v. Brown*, 265 U.S. 1, 12 (1924)).  In other words, the trust beneficiary is "entitled to the lowest intermediate balance, without the benefit of any deposits made after such balance was reached." *Id.*

In *Connecticut General Life,* a Chapter 11 bankruptcy trustee of a hotel received insurance proceeds when the hotel suffered fire damages.  *See* 838 F.2d at 615.  The trustee was contractually

obligated to forward the insurance payments to Connecticut General, but he failed to segregate the payments and instead commingled them in his account. *See id.* At one point, the trustee's account had fallen to zero. Applying the lowest intermediate balance rule, the court held that Connecticut General could not recover any funds because the commingled account had been depleted. *See Conn. General Life Ins.*, 838 F.2d at 619.

In our case, Vaughan Motors, the (constructive) trustee for Weathers, withdrew funds from its commingled account, which contained unsegregated payments from the various investors' contracts. The parties do not dispute that the commingled account, at one point, fell to $20.63, before it was partially replenished. Application of the lowest intermediate balance rule means that Weathers can recover only $20.63 out of his $8,691.32 in trust funds because the commingled account had been depleted to $20.63. The record reflects that the bankruptcy court did not apply this rule. On appeal, the district court correctly applied the lowest intermediate balance rule.

Weathers opposes the application of the lowest intermediate balance rule on equitable grounds. He maintains that the bankruptcy court had the equitable power to award the trust fund amount of $8,691.32 to him because it can "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the bankruptcy code pursuant to 11 U.S.C. § 105(a). Weathers further argues that it "is ludicrous to suggest that by ignoring the duty to segregate [Weathers'] funds, the debtor may be relieved of his obligations," allowing the Comptroller to "reap a benefit from the debtor's wrongdoing."

Weathers' equitable argument fails for two key reasons. First, he misapprehends the nature of this bankruptcy proceeding. We do not have a situation where a debtor has unfairly shirked his obligations at the expense of a sole creditor. Rather, we have competing creditors ) ) who were

equally wronged by the debtor)) all vying for the same limited amount of funds available in the commingled account. It is inaccurate to claim that the a particular creditor reaps an undeserved benefit here, or that the debtor is being relieved of its obligations.

Second, while 11 U.S.C. § § 105(a) gives bankruptcy courts some discretionary power, it "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *See United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986); *see also In the Matter of Oxford Mgmt., Inc.*, 4 F.3d 1329 (5th Cir. 1993) (holding that the district court improperly used its § 105(a) equity powers in ordering the debtor to make commission payments). Weathers has not cited one case which holds that § 105(a) trumps the lowest intermediate balance rule. The cases cited by Weathers are inapposite, as none of them involves the lowest intermediate balance rule or constructive trusts. The cases simply provide little support for his argument. For example, *In re Trans-Texas Petroleum Corp.*, 33 B.R. 67 (Bankr. N.D.Tex. 1983) does not even discuss § 105(a). Similarly, *In re Aerosmith Denton Corp.*, 36 B.R. 116 (Bankr. N.D. Tex. 1983) fails to support the argument that a bankruptcy court can award commingled funds to a creditor without considering the lowest intermediate balance rule. Finally, *In re R.H. Williams*, 61 B.R. 567 (Bankr. N.D.Tex. 1986), only held that a court can use § 105(a) to ratify an administrative freeze on an account.

Applying the lowest intermediate balance rule, we hold that only $20.63 of the $8,691.32 was traceable as a constructive trust on behalf of Weathers. For the balance of this claim as well as the untraceable $32,837.05, Weathers, like Morgan Trust, stands as a general unsecured creditor. On the other hand, the Comptroller's perfected prepetition tax lien likely acts as a secured claim. And since the amount of Comptroller's claim exceeds the remaining funds in the commingled account, it

effectively means that neither Weathers nor Morgan Trust can recover on their general unsecured claims. Furthermore, it renders moot Weathers' claim that a pro rata distribution of the untraceable $32,837.05 was inequitable.

However, as the district court noted, the bankruptcy court curiously failed to recognize the Comptroller's tax lien as a secured claim and instead treated it as a general unsecured claim. Thus, we agree with the district court that this case should be remanded to the bankruptcy court to determine whether the tax lien notice complied with § 113.001 *et. seq.* of the Texas Tax Code and whether the tax claim deserves priority under 11 U.S.C. § 726.

AFFIRMED.