16274

WOLFE *ET AL.* v. WOLFE *ET AL.*

(56 S. E. (2d) 343)

*Messrs. Hydrick & Hydrick,* of Orangeburg, *and J. M. Moorer,* of Walterboro, *for Appellants,*

*Messrs. Hugo S. Sims, Julian S. Wolfe and Thomas R. Wolfe,* of Orangeburg, *for Respondents,*

November 4, 1949.

PER CURIAM.

In the Circuit Court this litigation concerned the estate of the late and lamented W. C. Wolfe, and that of his wife, Mrs. Alma S. Wolfe, the former dying testate, the latter intestate. The mixing of the two estates in one action, which was occasioned by the allegations contained in the answer of the appellants, was unavoidable from their standpoint, and such resulted in a voluminous record, laborious to read and study in order to glean therefrom all testimony relating to the issue now before this Court.

While there are twenty-one exceptions to the decree of the Circuit Judge, two of them (Nos. 18 and 19) relate to the estate of Mrs. Wolfe but are apparently abandoned, the sole issue before this Court, as stated by the respondents and the appellants, being: "Did the devisees (under the will of W. C. Wolfe) procure an absolute devise and bequest by promising the testator, expressly or impliedly, that they would hold the property for the benefit of the widow and all the children of the testator, and afterward refused to perform their promise?"

The findings and the holdings of the Special Referee (the equivalent of a Master in Chancery), and of the Circuit Judge on this issue are in accord; and after a careful study of the record, we do not find anything therein which would warrant us in disturbing same. It is a fixed rule that this Court will not disturb concurrent factual findings of the Master and trial Judge in an equity case unless such findings are without evidence to support them or are against the clear preponderance of the evidence. *Alderman v. Alderman*, 178 S. C. 9, 181 S. E. 897, 105 A. L. R. 102.

We doubt our ability to improve on the decree of the Honorable E. H. Henderson, Circuit Judge, and therefore adopt and set forth below that portion thereof which decides the issue now presented, as the opinion of this Court:

"This case involves the will of Mr. William C. Wolfe, of Orangeburg, who was one of the most able and distinguished lawyers of our state.

"He had a large practice in Orangeburg and many of the surrounding counties. Such was his unlimited energy that he engaged in many business enterprises looking to the growth and advancement of his city and community. As a result he acquired valuable properties, but most of it was heavily mortgaged. Much of his property was held through stock ownership in holding corporations. Because of the restricted market for real estate and the limited credit obtainable at the time of his death, it clearly appears that on the then existing market a sale of all of his valuable properties would not have brought any great amount over and above his debts, although at the present time the values are considerably higher.

"He died on March 4, 1938. He left surviving him his widow, Mrs. Alma Sawyer Wolfe, and nine children. A short time before his death he called in his son Julian S. Wolfe and dictated his will. The instrument was then duly executed. It provides as follows:

" '1. I give, devise and bequeath all of my property, both real and personal, and wheresoever situate, unto my beloved sons, Julian S. Wolfe and Thomas R. Wolfe.

" '2. I hereby appoint my sons, Julian S. Wolfe and Thomas R. Wolfe, as executors of this my will.'

"The cause was referred to Honorable John S. Bowman, County Judge as Special Referee. After taking the testimony he has filed his report. Honorable M. M. Mann, resident Judge of the First Circuit, disqualified himself; as there was no Judge presiding in that circuit at that time, the cause comes before me under Section 37 of the Code, as the Judge of an adjoining circuit, upon exceptions to the report by both the plaintiffs and the defendants.

"The principal contention of the defendants is that Julian S. Wolfe and Thomas R. Wolfe were trustees for the widow and the children of William C. Wolfe, and a decision of this primary question will determine the result of a great many of the exceptions.

"Under their fourth exception and in the oral argument before me, the defendants stated that they do not claim that Julian S. Wolfe and Thomas R. Wolfe are trustees of an express trust, but that under the law and the facts of the case they are trustees of a constructive trust.

"Clearly the will did not name them as trustees of an express trust. The intention of a testator must be ascertained from the language he uses, where it is clear and unambiguous. Where a will is made by a person fully competent mentally to do so, and without any undue influence, as was the case here, the Courts have no power to depart from the plain language employed. No attack has been made upon the will for any cause at all, and so it stands as written.

"Neither does the testimony show an assumption or declaration of an express trust on the part of the two devisees. The defendants do not contend that such is the case, but their contention is that the statements made in certain letters and numerous other facts in the case are evidences upon which the Court of Equity should engraft a constructive trust.

"The law as to constructive trusts is quite well settled by a number of decisions of the Supreme Court.

"In the case of *Bank of Williston v. Alderman,* 106 S. C. 386, 91 S. E. 296 [297], the Court quoted the following from Pomeroy Equity Jurisprudence: 'By the well-settled doctrines of equity, a constructive trust arises whenever one party has obtained money, which does not equitably belong to him, and which he cannot in good conscience retain or withhold from another, who is beneficially entitled to it; as, for example, when money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust, or violation of fiduciary duty, and the like. It is true that the beneficial owner can often recover the money due to him, by a legal action upon an implied assumpsit, but in many instances a resort to the

equitable jurisdiction is proper and even necessary. * * * It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Whenever one person had wrongfully taken the property of another, and converted it into a new form or transferred it, the trust arises and follows the property or its proceeds.'

"And in the same case the Court cites with approval the following from 39 Cyc. 169: "Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, actual or constructive, is their essential element. Actual fraud is not necessary, but such trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio,* or *ex delicto,* or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity, whenever it becomes necessary to prevent a failure of justice.'

"Speaking of constructive trusts, in the case of *Greene v. Brown,* 199 S. C. 218, 19 S. E. (2d) 114 [116], the Court quotes the following from 65 C. J. 455: 'Fraud, actual or constructive, is an essential element in the creation or existence of a constructive trust, and no such trust arises where there are no circumstances which make it inequitable for one to hold absolute title to property against another.'

"The Supreme Court declared in the case of *All v. Prillaman,* 200 S. C. 279, 20 S. E. (2d) 741, 749, [159 A. L. R. 981]: 'Constructive trusts have none of the elements of an express trust, but arise entirely by operation of law without reference to any actual or supposed intention of creating

a trust and are resorted to by equity to vindicate right and justice or frustrate fraud.'

"In *Dominick v. Rhodes,* 202 S. C. 139, 24 S. E. (2d) 168 [172], we find the following: 'It is true that generally speaking fraud is an essential element but it need not be actual fraud.'

"In the *Dominick case* the Court cited with approval the text of 65 C. J. 456, 457, as follows: 'Actual or intentional fraud is not necessary, nor is it necessary that any express or conventional trust relation shall exist between the parties, or that any promise shall have been made by the one for the benefit of the other'.

"We read in *Searson v. Webb,* 208 S. C. 453, 38 S. E. (2d) 654 [657]:

" 'A constructive trust is the creation of the court and is permitted to be proved by parol despite the statute of frauds upon the high and long established ground that the statute will not be permitted to shield a fraud. The device has statutory sanction in this State. Section 9042, Code of 1942. However it does not result from unwritten words alone, but by the fact of fraud, bad faith, abuse of confidence or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution to the wronged *cestui.*

" 'Restatement of the Law of Restitution of the American Law Institute, page 641, *et seq.,* contains an enlightening exposition of the subject. There is found this: "A constructive trust, unlike an express trust, is not a fiduciary relation, although the circumstances which gives rise to a constructive trust may or may not involve a fiduciary relation." '

"This *Searson case* also quotes the following from [2] Bogert on Trusts and Trustees [§ 451]: 'Constructive trusts will be considered as comprising those cases where a court of equity finds that a defendant holds a property interest unfairly as against the complainant, but not under an express or resulting trust'.

"The law as to secret trusts is discussed in the case of *Wilkinson v. Wilkinson,* 192 S. C. 497, 7 S. E. (2d) 447.

"There was absolutely no fraud, either actual or constructive, on the part of the two devisees in connection with the execution of the will. They have not obtained property which does not equitably belong to them. The other children of William C. Wolfe are not beneficially entitled to the property. There was no breach of trust on the part of the two devisees; there was no agreement between the two sons and their father, and no promise by the sons to handle the property as trustees. There was no secret agreement. Julian S. Wolfe did not know anything about the making of the will until he was called in to act in a clerical capacity in writing down what his father dictated to him.

"I conclude that there was no constructive trust in this case.

"The maxim urged by the defendants that equality is equity is a valuable one, yet equity must proceed upon established principles, and where there is a clear and valid will and no circumstances upon which a constructive trust may soundly be engrafted, the Court would be going far beyond its powers in decreeing an equal division where the testator did not so provide.

"The defendants earnestly urge that Mr. Wolfe would not intentionally have left his property to two of his sons, and have left out his beloved wife and seven devoted children, and they contend that this shows that he intended a trust. To this it must be said that a most valuable right possessed by every person is to devise his property as he wishes. Wills are made by the testators, not by the Court. The Court has no right to say what a testator might have done, or to remake his will for him, but it is absolutely governed under the law to construe wills as they are written, if the language used is clear and unequivocal.

"The property belonged legally to Julian S. Wolfe and Thomas R. Wolfe as the devisees under their father's will,

and as such owners they had an absolute legal right to do what they pleased with it. In spite of this, these two generously sought to handle the property in such a way as to give to the other children a part of the property of their father, although they were under no legal obligation so to do.

"Since there was no constructive trust, and since the nine children were not tenants in common, and since there was no legal duty resting upon the devisees to make any division among the nine children, it is altogether unnecessary for the Court to inquire into the various sales of property or the division as made by Julian S. Wolfe and Thomas R. Wolfe of the lands left them by their father.

"Many instances are cited by the defendants which they claim resulted in a sale of properties at low figures. The defendants were not creditors. Since Julian S. Wolfe and Thomas R. Wolfe were the legal owners of all the property of the estate of William C. Wolfe, no legal injuries resulted to the defendants from the fact that the properties did not sell for a greater price.

"And so it will not be necessary for the Court to pass upon the various exceptions which relate to the handling of the property of William C. Wolfe by the two devisees, since the other children did not have any legal ownership in the property, and could not be prejudiced by any action on the part of the real owners in disposing of it. Nor does any defendant have a right to control the course of the devisees in their gifts to the other brothers and sisters."

Judgment affirmed, and the case is remanded for such further proceedings as may be necessary to comply with the decree of the Circuit Court in reference to the property of Mrs. Alma S. Wolfe, and the accounting of E. V. Fenton.