**In re CAMBRIDGE MORTGAGE CORPORATION, Debtor.**

**Bankruptcy No. 87–3933.**

United States Bankruptcy Court,
D. South Carolina.

May 12, 1988.

Douglas Nunn, John Egan, Nelson, Mullins, Riley, and Scarborough, Columbia, S.C., for Federal Home Loan Mortgage Ass'n.

Robert F. Anderson, Trustee, H. Flynn Griffin, Robert F. Anderson, P.A., Columbia, S.C., for trustee.

### ORDER ON MOTION OF FEDERAL HOME LOAN MORTGAGE CORPORATION

WILLIAM THURMOND BISHOP,
Bankruptcy Judge.

This matter comes before the court on the motion of Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac") for an Order lifting the automatic stay to permit FHLMC to recover certain

monies on deposit at Southern National Bank in Charleston, South Carolina in account number 791518707. FHLMC has asserted that the Debtor established account number 791518707 for its benefit, pursuant to agreements under which the Debtor serviced mortgages purchased by FHLMC and thereafter deposited principal, interest, and escrow payments on the individual mortgages into the account for the benefit of FHLMC. FHLMC maintains that the monies in the account are not property of the estate under 11 U.S.C. § 541 and, as such, FHLMC is entitled to claim the monies in the account without interference by the Debtor. The Debtor contends that the monies in the account are the property of the estate and that FHLMC does not have any ownership interest in the proceeds. Hearings on the motion were held on March 14, 1988 and April 28, 1988, at which FHLMC introduced evidence and presented testimony from four witnesses: Richard Schmertzler and Peggy Richardson, former employees of Cambridge Mortgage Corporation ("Cambridge"), and Daphine Lynch and Charles W. Pearson, employees of FHLMC. The Trustee presented no witnesses and introduced no evidence in support of his contentions.

### FINDINGS OF FACT

1. Cambridge was engaged in the business of selling mortgages to FHLMC, and others, and servicing those mortgages.

2. Cambridge ceased operations on October 16, 1987. An involuntary petition in bankruptcy was filed against Cambridge on December 7, 1987. There is currently on deposit in Account No. 791518707 at Southern National Bank the amount of $137,-213.27 Dollars.

3. During the period from December 1986, through October 1987, Cambridge sold a total of 64 notes and mortgages to FHLMC. Typically, Cambridge would make an offer to sell a note and mortgage to FHLMC over the telephone. If the offer was acceptable, FHLMC would then execute a document known as a "Fixed Rate Mortgage Purchase Contract" and forward the document to Cambridge for acknowledgment.

4. The Fixed Rate Mortgage Purchase Contracts (the "Contracts") contained the following language:

The Federal Home Loan Mortgage Corporation ("Freddie Mac" or "FHLMC") hereby accepts the offer of the seller named below to sell to Freddie Mac, conventional home mortgages and/or undivided interests in conventional home mortgages, and total principal amount to be purchased by Freddie Mac as stated herein, on the terms stated below, in accordance with the Sellers' and Servicers' Guide and with the purchase documents as defined therein, as in effect on the date of seller's offer, all of which are fully incorporated herein by this reference.

5. The Contracts sometimes covered the sale of multiple notes and mortgages. A total of 35 Contracts were executed by FHLMC and Cambridge, covering the 64 notes and mortgages sold by Cambridge to FHLMC.

6. FHLMC required that Cambridge forward to it the original note for every note and mortgage which it purchased. Only after receipt of the original note and other required documentation did FHLMC forward the principal amount of the note to Cambridge.

7. FHLMC has had in its possession since the time of purchase the original notes for each of the notes and mortgages which it purchased from Cambridge. As a general rule, under FHLMC guidelines, the servicer retains the original mortgages. In this particular case, Cambridge so retained the original mortgages. The original notes have been kept at the Atlanta office of FHLMC and were brought to the hearing by Ms. Daphine Lynch, an employee of the FHLMC office in Atlanta.

8. The Sellers' and Servicers' Guide contains the rules and regulations which govern the servicing relationship between FHLMC and companies which it engages to service mortgages, such as Cambridge. The following provisions of Sellers' and

Servicers' Guide are relevant to the issues raised in this proceeding:

A. The Sellers' and Servicers' Guide is one of the purchase documents. The purchase documents constitute the agreement between the Seller, the Servicer, and Freddie Mac and establish the terms, conditions, warranties, representations, and requirements governing the sale to Freddie Mac and servicing for Freddie Mac of mortgages and participation interest therein. (Sellers' and Servicers' Guide, Section 0104).

B. Within the delivery period established in the purchase contract, the Seller agrees to deliver the following to the applicable Freddie Mac regional office:

— a Contract Delivery Summary (Form 381, Exhibit 24)

— either a Mortgage Submission Voucher (Form 13SF, Exhibit 5) completed for each mortgage, or a Mortgage Loan Submission schedule (Form 11, Exhibit 4)

— the original note endorsed to Freddie Mac

— and any other documentation required by the purchase documents (Sellers' and Servicers' Guide, Section 8706).

C. The fiscal responsibilities of the Servicer include the following:

— accurate and timely accounting, reporting and remittance to Freddie Mac of the principal and interest portions of monthly installment payments, as well as any other sums paid by borrowers that Freddie Mac may require to be remitted;

— accurate and timely accounting for administration of escrow (impound) accounts, if applicable; (Sellers' and Servicers' Guide Section 8002).

D. The Servicer is responsible for establishing and maintaining adequate principal and interest accounts, escrow accounts and procedures for safeguarding such funds. In this regard, the Servicer must establish the appropriate accounts and treat payments for Freddie Mac according to the requirements of this section ... Non-federally insured Servicers must establish deposit accounts at a financial institution whose deposits or accounts are insured by an agency of the United States.

Upon Freddie Mac's purchase of mortgages, the Servicer must immediately transfer to the deposit accounts all installments on hand due to the Freddie Mac as a result of the purchase and all escrow funds.

Amounts held for Freddie Mac must be deposited no later than the first business day after receipt. (Sellers' and Servicers' Guide, Section 8005).

9. The Sellers' and Servicers' Guide, the provisions of which were incorporated by reference in the Contracts, also requires the servicer to remit collected funds to FHLMC at least once each month. As a result, the servicers, including Cambridge, are responsible not only for collection, but also for holding the deposit of substantial amounts of money for the benefit of FHLMC.

10. Cambridge, in servicing accounts for FHLMC and other entities, established an account known as a servicing clearing account at Southern National Bank (account number 791504825) (the "Servicing Clearing Account"). It was the standard practice of Cambridge to deposit monthly payments of principal and interest and escrow payments received on all individual mortgages, including those purchased by FHLMC, into the Servicing Clearing Account. Then, after a period of time which varied from one day to several business days or more, Cambridge would debit the Servicing Clearing Account and credit accounts of the owners of the mortgages. According to the information provided by the Trustee, there were at least eleven different accounts established by Cambridge at Southern National Bank.

11. Cambridge established an individual account at Southern National Bank for the benefit of FHLMC, which account bears the number 791518707 (the "FHLMC Account" or "Account No. 791518707"). The signature card for the account bears the

legend "Cambridge Mortgage Corporation Servicing Account for FHLMC."

12. The Movant introduced the statements of Southern National Bank for account number 79158707 covering the last three months of Cambridge's operation—August, September and October of 1987.

13. Richard Schmertzler, former servicing manager of Cambridge, appearing as a witness for FHLMC, reviewed the three months of statements on the FHLMC account. The statements showed, among other things, and I find as a fact, that the balance in the account was $66,485.53 as of July 31, 1987; that deposits were made into the FHLMC Account from the Servicing Clearing Account during August, September and October, and that the balance in the account, as of October 30, 1987, was $137,213.27. Mr. Schmertzler stated that the balance in the Account as of July 31, 1988, was composed entirely of monies held for the benefit of FHLMC, estimating that approximately eighty (80%) percent of this amount represented escrow payments on the FHLMC notes and mortgages and the balance represented then-current payments of principal and interest. Mr. Schmertzler further stated that to the best of his knowledge all deposits in the FHLMC Account from the Servicing Clearing Account represented payments of principal, interest and escrow amounts on notes and mortgages owned by FHLMC, with the exception of servicing fees earned by Cambridge in servicing the 64 FHLMC mortgages, which fees were typically withdrawn from the FHLMC Account from time to time. Mr. Schmertzler estimated the amount of servicing fees possibly due and owing from FHLMC to Cambridge and unpaid to be no more than $1,000.00 as of October 16, 1988, when Cambridge ceased operations.

14. Mr. Schmertzler reviewed an Online History List printed by American Automated as of November 6, 1987, which was admitted into evidence and which showed payments of principal, interest and escrow payments on 56 of 64 notes and mortgages owned by FHLMC. The other eight notes and mortgages, sold to FHLMC during the months of August and September of 1987,

had not been added to the computerized Online History List prior to cessation of business by Cambridge. Mr. Schmertzler also reviewed a summary sheet listing each of the 64 notes and mortgages, and reflecting a composite of actual deposits into the Servicing Clearing Account. Mr. Schmertzler testified, and I find as a fact, that the documents indicated that all required payments of principal and interest had been made on each of the notes and mortgages through the month of October, 1987 with only two exceptions.

15. Mr. Schmertzler testified that he had also reviewed bank records of the deposits into the Servicing Clearing Account for the months of August, September and October 1987. Mr. Schmertzler testified that based upon his general knowledge of the procedures for deposit of items into the Servicing Clearing Account, Cambridge was obligated to deposit amounts to the FHLMC Account from the Servicing Clearing Account within one business day after receipt of payments of principal and interest and escrow payments on the FHLMC mortgages. Mr. Schmertzler stated that this was generally done, although he admitted that it sometimes took more time than one day to make the deposits into the FHLMC Account. Mr. Schmertzler testified, and I find as a fact, that all monies on deposit in the FHLMC Account represent escrow payments and payments of principal and interest made by mortgagors on the 64 notes and mortgages held by FHLMC, which payments were originally deposited into the Servicing Clearing Account, and that the monies do not include any payments on notes and mortgages other than payments on the 64 FHLMC notes and mortgages.

16. Mr. Charles W. Pearson, Director of the Eastern Division of Industry Accounting for FHLMC, testified, and I find as a fact, that FHLMC records show that Cambridge owes payments to FHLMC totalling $147,135.36, which sum is comprised of: (i) principal and interest payments for September, 1987, in the amount of $37,719.54; (ii) principal and interest payments for October, 1987, in the amount of $40,096.71; (iii) $1,550.00 in penalties for late pay-

ments, less $43.40 in adjustments for principal and interest over-remittance and (iv) $67,812.71 in escrow payments. Mr. Pearson testified that Cambridge was required to hold the escrow payments for the benefit of both the individual mortgagors and for FHLMC, inasmuch as FHLMC would be responsible for payment of taxes and insurance in the event any mortgagor failed to make such payments. Mr. Pearson stated that even though FHLMC had not been able to obtain the monies on deposit in the FHLMC Account, FHLMC had already funded the escrow balances on each of the 64 notes and mortgages by forwarding monies in the amount of $68,158.37 to another servicing entity, which has taken over servicing of the 64 notes and mortgages.

17. The Trustee introduced no evidence or testimony in support of his contention that the Notes and Mortgages and the monies in the FHLMC Account were "property" of the estate within 11 U.S.C. § 541 or to show that FHLMC is adequately protected or that the Debtor has any equity in the notes and mortgages and monies in the FHLMC Account.

### ISSUES

I. Whether FHLMC owns the 64 notes and mortgages which were being serviced by Cambridge Mortgage Corporation.

II. Whether the $137,213.27 Dollars on deposit in Southern National Bank Account No. 791518707 is "property" of the debtor's estate under 11 U.S.C. § 541.

III. Whether the automatic stay should be lifted under 11 U.S.C. § 362 to allow FHLMC to obtain possession of monies in Southern National Bank Account No. 791518707.

### DISCUSSION AND CONCLUSIONS

I. The Trustee has demanded strict proof that FHLMC is owner of the 64 notes and mortgages which were subject to serving agreement with Cambridge.

FHLMC has amply demonstrated that it is the owner of the 64 notes and mortgages which were being serviced by Cambridge. Negotiable notes are gov-

erned by the Uniform Commercial Code ("UCC") as adopted in South Carolina and other states. It makes no difference that the note is secured by an interest in real estate or that FHLMC does not hold the original mortgages in its name. As the Fourth Circuit noted in *Capital Investors v. Executors of the Estate of Morrison,* 484 F.2d 1157 (4th Cir.1973), *cert denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979):

> The notes in dispute are negotiable instruments and the transferability of such notes, as well as the rights flowing from such transfers, are to be determined by the legal principal unique to negotiable instruments. This is so, though the notes are secured by a real estate mortgage.

*Id.* at 1160. Under U.C.C. § 3–202, 3–303 and 3–302 (S.C.Code § 36–3–202, 36 3–301 and 36 3–302) delivery for value of an endorsed note to a holder who takes without notice of claims or defenses gives the holder of the note the right to payment under it free of all claims of any person. The fact that the note is secured in no way changes this result.

The rights of the holder of mortgage secured notes to payments made thereunder has most recently been confirmed in connection with perfection by possession of a U.C.C. article nine security interest in mortgage secured notes taken as collateral. *In re Maryville Savings and Loan Corporation,* 743 F.2d 413 (1984), *clarified on reconsideration,* 760 F.2d 119 (6th Cir. 1985), the Sixth Circuit upheld the rights of the holder of mortgage-secured notes (the trustee in bankruptcy) to the payments made by the mortgage borrowers over the claim of a bank to have a security interest in those obligations. Although decided under Article 9, *Maryville* makes clear that the holder of a mortgage secured note is entitled to payment thereon even if the mortgagee of record is another person. Under the governing principles of the U.C.C. and *Maryville,* FHLMC, as holder of the original notes, is clearly the owner and holder of legal title to the notes and mortgages and is entitled to payments thereon.

Further, 11 U.S.C. § 541 provides unique protection for entities in position of FHLMC. Section 541(d) provides:

"Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

The legislative history of § 541(d) is replete with references to "the secondary mortgage market" and "bona fide secondary mortgage market transactions." *See e.g.* S.Rep. No. 95–989, 95th Cong., 2d Sess. 83 (1978); U.S.Code Cong. & Admin.News 1978, pp. 5787, 5869:

"Section 541(e) [now (d)] confirms the current status of bona fide secondary mortgage market transactions as the purchase and sale of assets. Mortgages or interest in mortgages sold in the secondary mortgage market should not be considered part of the debtor's estate.

*See In re Columbia Pacific Mortgage, Inc.* 20 B.R. 259, 261–62 (Bankr.W.D.Wash. 1981); *In re Adana Mortgage Bankers, Inc.,* 12 B.R. 989, 1005–08 (Bankr.N.D.Ga. 1980). It is indisputable that the major motivating force behind the enactment of § 541(d) was the protection of the national secondary mortgage market and certain participants in that market, such as Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, and Federal National Mortgage Association. *See In re Adana Mortgage Bankers, Inc.,* 12 B.R. at 1006–07; Senate Hearings on S.2266 and H.R8200 at 1131–62.

The scope of section 541(d) was summarized by the Floor Manager of the bankruptcy legislation, Senator DeConcini, as follows:

The purpose of section 541(d) as applied to the secondary mortgage market is identical to the purpose of section 541(e) of the Senate Amendment and ... will accomplish the same result as would have been accomplished by section 541(e). Even if a mortgage seller retains for purposes of service legal title to mortgages or interests in mortgage market, the trustee would be required by section 541(d) to turn over the mortgages or interests in the mortgages to the purchaser of those mortgages....

The application of section 541(d) to secondary mortgage market transactions will not be affected by the terms of the servicing agreement between the mortgage servicer and the purchaser of the mortgages. Under section 541(d) the trustee is required to recognize the purchaser's title to the mortgages or interest in the mortgages and to turn this property over to the purchaser....

The purpose of § 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees and the purchasers of mortgages will be able to obtain the mortgages or interest in mortgages which they have purchased from trustees without the trustees asserting that a sale of mortgages is a loan from the purchaser to the seller. *Senate Debate on Compromise Bill,* 124 Cong.Rec. 517413–14.

In light of this legislative history, and the facts and circumstances, it is clear that FHLMC owns the notes and mortgages at issue as well as the proceeds of the notes and mortgages collected by Cambridge on FHLMC's behalf.

II. FHLMC takes the position that the $137,213.27 on deposit in Account no. 791518707 is held in constructive trust by Cambridge for the benefit of FHLMC and that under constructive trust principles and 11 U.S.C. § 541(d) FHLMC is entitled to such monies. The Trustee takes the position that FHLMC has failed to establish a constructive trust and that it must trace the proceeds into the account and that it has failed to do so.

■ It is clear from a review of the contractual agreements between FHLMC and Cambridge and the nature of their relationship that Cambridge held all payments of principal, interest, and escrow payments received in trust for the benefit of FHLMC and its investors. The terms of the Sellers' and Servicer's Guide make clear the duty of Cambridge to remit to FHLMC principal and interest portions of monthly installment payments as well as other sums paid by borrowers and to make accurate and timely accounting for administration of escrow accounts. Cambridge was also required to maintain adequate principal and interest accounts and escrow accounts and establish procedures for safeguarding such funds. As such, Cambridge had a fiduciary duty to hold principal, interest and escrow payments for the benefit of FHLMC and to promptly remit such payments to FHLMC. The court finds that the language of the Sellers' and Servicers' Guide is sufficient to create an express trust in favor of FHLMC in regard to the payments of principal, interest and escrow on the 64 notes and mortgages. Further, even if no express trust has been created, the court finds that a constructive trust has arisen regarding the monies in Account No. 791518707. A constructive trust results from fraud, bad faith, abuse of confidence or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution. *Searson v. Webb*, 208 S.C. 453, 38 S.E.2d 654 (1946), cited in *Lollis v. Lollis*, 291 S.C. 525, 354 S.E.2d 559 (1987). A constructive trust will arise whenever circumstances under which property was acquired make it inequitable that the property should be retained by him who holds legal title, as against another, provided some confidential relationship exists between the two and provided the raising of the trust is necessary to prevent failure of justice. *In re Thames*, 21 B.R. 704 (Bankr. S.C.1981). Where a party obtains legal title to property which he is not equitably entitled to retain against another who obtains beneficial ownership, then a constructive trust will be imposed by operation or law to protect the interest of the beneficial owner. *Wolfe v. Wolfe*, 215 S.C. 530, 56

S.E.2d 343 (1949). The test employed by South Carolina courts in deciding whether a constructive trust should be imposed is simply whether the contested property is acquired under circumstances rendering it inequitable that the property should be retained by the holder of bare legal title as against the equitable owner. *Baptist Foundation for Christian Education v. Baptist College at Charleston*, 282 S.C. 53, 317 S.E.2d 453 (App.1984) *cert granted* 284 S.C. 366, 326 S.E.2d 649, *cert. dismissed* 285 S.C. 456, 330 S.E.2d 287 (1985). *See also Lollis v. Lollis*. Based upon the evidence and testimony presented, the court finds that FHLMC has established clear and convincing evidence that a constructive trust exists as to the monies held in Southern National Bank Account No. 791518707.

■ The court also finds that FHLMC has sufficiently demonstrated that it can trace payments on 64 individual notes and mortgages into the Servicing Clearing Account and on into Southern National Bank Account No. 791518707. This case is fundamentally different from a case which would require a creditor to trace its funds; *e.g.* where monies have been paid into a debtor's general bank account and left there, and then, after bankruptcy, subjected to creditors' claims of trust. *See e.g. Elliott v. Bumb*, 356 F.2d 749 (9th Cir. 1966). Here the proceeds at issue are not in a commingled account, but in an account which was established by the Debtor solely for the benefit of FHLMC. The words "Servicing Account for FHLMC" are, for instance, on the account card. This case presents a situation where the debtor *has* segregated funds to be paid to one of its purchasers, FHLMC. As such, the situation presented is similar to that found in *In re American International Airways, Inc.*, 70 B.R. 102 (Bankr.E.D.Penn.1987). (Where monies were segregated in separate account for IRS, Court found that a trust for benefit of the IRS existed.)

Both FHLMC employees and a former employee of Cambridge testified that Cambridge was required by the Sellers' and Servicers' Guide to make deposit of individual mortgage payments within one busi-

ness day after receipt. The former employee of Cambridge testified that as a general rule Cambridge made deposits of monies representing payments of principal, interest and escrow amounts from the Servicing Clearing Account into the FHLMC account within one business day after deposit into the Servicing Clearing Account or within several days thereafter. The Trustee presented no evidence or testimony to the contrary.

The court finds that based upon the testimony and evidence presented, FHLMC has sufficiently traced the deposits of payments of principal, interest and escrow amounts by the individual mortgagors into the Servicing Clearing Account, and from the Servicing Clearing Account, on into the FHLMC account. The court also finds, however, that the Debtor may be entitled to uncollected service fees held in the account, which fees are estimated by the former servicing manager of FHLMC to be not in excess of $1,000.00. The court finds that $1,000.00 on deposit in Account No. 791518707 may be "property" of the estate within the meaning of 11 U.S.C. § 541 and should continue to be held in that account until further order of the court and that the remaining $136,213.27 on deposit in Account No. 791518707 is not "property" of the estate within the meaning of 11 U.S.C. § 541 but instead that such monies are payments held in trust by Cambridge for the benefit of FHLMC and this amount should be immediately paid over by Southern National Bank to FHLMC.

III. Based on the testimony and evidence, the Court finds that the interest of FHLMC in the 64 notes and mortgages and in $136,-213.27 on deposit in Account No. 791518707 is not adequately protected within the meaning of 11 U.S.C. § 362(d)(1). The Court further finds that the Debtor has no equity in the 64 notes and mortgages or in $136,213.67 on deposit in Account No. 791518707, and that the property is not necessary to an effective reorganization within the meaning of 11 U.S.C. § 362(d)(2). The Court further finds that the facts and circumstances clearly warrant lifting the automatic stay to allow FHLMC to obtain possession of the monies as to which it has demonstrated its ownership.

IT IS ORDERED, ADJUDGED AND DECREED:

I. FHLMC is owner of the 64 notes and mortgages which it purchased from Cambridge Mortgage Corporation.

II. FHLMC has demonstrated that the 64 notes and mortgages are not "property" of the estate within the meaning of 11 U.S.C. § 541. FHLMC has also demonstrated that $136,213.27 of the $137,213.27 on deposit in Southern National Bank Account No. 791518707 constitutes principal, interest and escrow payments held by Cambridge in trust for FHLMC and, as such, the $136,213.27 does not constitute "property" of the estate within the meaning of 11 U.S.C. § 541.

III. The automatic stay is lifted pursuant to 11 U.S.C. § 362(d)(1) and (2) to allow FHLMC to obtain possession of $136,213.27 on deposit in Southern National Bank Account No. 791518707. The stay shall remain in effect as to the other $1,000 on deposit in the account until further order of the Court.