Joseph N. CALLAWAY, as Bankruptcy Trustee for Davis' IGA, Inc., Appellant,

v.

MEMO MONEY ORDER COMPANY, Appellee.

No. 5:07–CV–306–D.

United States District Court, E.D. North Carolina, Western Division.

Jan. 16, 2008.

A. Scott McKellar, Battle Winslow Scott & Wiley, PA, Rocky Mount, NC, for Appellant.

Chad A. Sharkey, Jeff Daniel Rogers, Smith Debnam Narron Wyche Saintsing & Myers, L.L.P., Raleigh, NC, for Appellee.

## ORDER

JAMES C. DEVER III, District Judge.

Joseph N. Callaway, the trustee in bankruptcy for Davis' IGA, Inc., appeals from the judgment of the United States Bank-

ruptcy Court for the Eastern District of North Carolina, which held that the North Carolina Money Transmitters Act, N.C. Gen.Stat. § 53–208.1 et seq., ("NCMTA") creates a floating trust that eliminates the need for a claimant to trace trust funds within a bankruptcy estate. On January 10, 2008, the court held oral argument. As discussed below, the bankruptcy court erred when it concluded that the NCMTA eliminates a federally-mandated tracing analysis. Accordingly, the bankruptcy court's judgment is vacated, and the action is remanded for further proceedings consistent with this order.

## I.

Russell and Teresa Davis ("the Davises") were the sole shareholders in an IGA grocery store known as "Davis' IGA, Inc." ("IGA") in Windsor, North Carolina. *In re Davis*, 371 B.R. 127, 131 (Bankr. E.D.N.C.2007) (order, inter alia, granting plaintiff's motion for summary judgment) [hereinafter "Bankr.Order"]. In January 1995, IGA entered a contract with MEMO Money Order Company ("Memo") allowing IGA to sell money orders through Memo. *Id.* The contract contained a provision entitled "Trust Relationship," which required that IGA hold any funds received from money order sales in a separate and independent trust account for the benefit of Memo. *Id.* IGA therefore had two checking accounts—one a "General Operating Account" and one a "Money Order Account." *Id.* at 131–32. Pursuant to its contract with Memo, IGA granted Memo the right to electronically "sweep" the Money Order Account to collect payment for the money order sales. *Id.* at 131–32. Memo generally did this once per week, on Tuesday or Wednesday. *Id.* at 132.

At some point it became routine business practice for IGA to violate the contract and place funds from money order sales directly into the General Operating Account instead of the Money Order Account. *Id.* Knowing that Memo would sweep the Money Order Account on Tuesdays or Wednesdays, the Davises would transfer funds from the General Operating Account into the Money Order Account just before Memo was to make its sweep. *Id.* As IGA's financial condition deteriorated, this practice backfired on two occasions, and Memo's sweep was twice rejected for insufficient funds: Memo was unable to collect the $17,390.35 it was due for the week of September 26, 2005, and the $23,715.03 it was due for the week of October 3, 2005. *Id.* at 132–33. On October 14, 2005, the Davises filed for personal bankruptcy under Chapter 7. *Id.* at 133. On December 1, 2005, IGA filed for corporate bankruptcy under Chapter 7. *Id.*

Joseph Callaway ("Callaway") was appointed trustee of the IGA Chapter 7 case. *Id.* Upon taking control of the estate, Callaway found $30,530.38 in the General Operating Account, and $39,507.30 in the Money Order Account. *Id.* Callaway closed both accounts and claimed the funds as property of the bankruptcy estate. *See id.*

Memo commenced an adversary proceeding against Callaway, ultimately claiming that the $39,507.30 found in the Money Order Account properly belonged to Memo and not the bankruptcy estate, since Memo had not been paid for the September 26 and October 3 weekly money order draws, and IGA was required to hold those funds in trust for Memo.[1] *See id.* at 133–34.

---

1. Although the amount in the Money Order Account at the time of the bankruptcy petition is not the exact amount that Memo claims that it is owed ($17,390.35 + $23,715.03 = $41,105.38), it is close ($39,507.30). Memo originally sought $41,105.38 in the adversary

Callaway responded that Memo had no right to the funds because they had lost their trust character when they were commingled with the rest of IGA's funds in the General Operating Account, as the Davises' routine business practice was to put the money order funds first into the General Operating Account, and only then into the Money Order Account when they anticipated Memo's sweep. *See id.* Both Callaway and Memo filed cross-motions for summary judgment, each claiming that the undisputed facts in the record established that respective party's right to the $39,507.30 as a matter of law. *See id.* at 133–34.

In the bankruptcy court proceedings, Memo argued that the undisputed facts established its right to the funds in the Money Order Account under the NCMTA. *See* Tr. of Hr'g 6–7, 10–12. The NCMTA provides in relevant part:

All funds, less fees, received by an authorized delegate of a licensee from the sale or delivery of a payment instrument or stored value issued by a licensee or received by an authorized delegate for transmission shall constitute trust funds owned by and belonging to the licensee from the time the funds are received by the authorized delegate until the time when the funds or an equivalent amount are remitted by the authorized delegate to the licensee. If an authorized delegate commingles any funds with any other funds or property owned or controlled by the authorized delegate, all commingled proceeds and other property shall be impressed with a trust in favor of the licensee in an amount equal to the amount of the proceeds due the licensee.

N.C. Gen.Stat. § 53–208.20(f). Under the NCMTA, Memo is a "licensee," IGA is an

"authorized delegate," and a money order is a "payment instrument." *See* Bankr.Order 7. Accordingly, Memo argued that the NCMTA controls, and the funds could not lose their trust character because the NCMTA impresses a trust on all commingled funds in an amount equal to the amount of the proceeds due the licensee. *See* Tr. of Hr'g 12.

Callaway did not dispute that the NCMTA applies to this case and creates a trust corpus. *See id.* at 22. However, Callaway argued that even though the NCMTA applies, that did not end the inquiry, because the Fourth Circuit has held that before any trust funds can be removed from the bankruptcy estate, the claimant must show as a matter of federal law that he is in fact removing the trust corpus (and not some other funds) by tracing the trust corpus through the "lowest intermediate balance rule." *See id; In re Dameron,* 155 F.3d 718, 723 (4th Cir.1998). Callaway argued that Memo could not trace any of the $17,390.35 from the week of September 26, 2005, that it could at best only trace a portion of the $23,715.03 from the week of October 3, 2005, and that summary judgment was therefore inappropriate. *See* Tr. of Hr'g 25–26.

The bankruptcy court granted Memo's motion for summary judgment. *Id.* at 26. The bankruptcy court held that the NCMTA controlled the entire dispute, including the tracing question. *See id.* The bankruptcy court found no case interpreting the NCMTA and analogized the NCMTA to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq. *See* Bankr.Order 8. The PACA creates a "floating" trust, such that where produce held in trust is mixed with unencumbered produce, the entire com-

proceeding, but later apparently made a strategic choice to pursue only the amount in the

Money Order Account. *See* Bankr.Order 9 n. 1.

mingled batch becomes subject to the trust in the amount owed the beneficiary, and tracing is unnecessary. *See* 7 U.S.C. § 499e(c)(2); *Sanzone–Palmisano Co. v. M. Seaman Enter., Inc.,* 986 F.2d 1010, 1012 (6th Cir.1993) ("In other words, the trust beneficiary need not prove that it, and not another produce supplier, was the source of the produce or the produce-related assets."); *In re H.R Hindle & Co., Inc.,* 149 B.R. 775, 785 (Bankr.E.D.Pa.1993) (the PACA floating trust gives "PACA trust creditors a priority over all other creditors. Legislative history supports Congress' intention to give these parties an almost unconditional priority. The concept of a 'floating trust' eliminates the tracing requirement. The PACA trust is therefore extremely potent in its ability to affect distribution in bankruptcy. It effectively provides its beneficiaries with a claim status that trumps that of all other creditors, even secured creditors.").

The bankruptcy court reasoned that when the money order proceeds were commingled with IGA's general operating revenues, the entire commingled batch became subject to a floating trust in the amount owed to Memo, and that the NCMTA entitled Memo to collect the full amount it was owed without any need to trace. *See* Bankr.Order 9. However, because Memo's amended complaint asked only for all the funds found in the Money Order Account (i.e., $39,507.30), the bankruptcy court awarded that amount of money. *Id.* at 9 n. 1. The bankruptcy court declined to address the parties' arguments concerning equitable estoppel and the proper result of a tracing analysis. *Id.* at 9; Tr. of Hr'g 26–27.

On appeal, Callaway challenges the judgment in favor of Memo and argues that the bankruptcy court erred when it relied exclusively on the NCMTA. Appellant's Br. 9. Callaway also argues that

Memo should be equitably estopped from asserting a trust, *id.* at 8–9, and that Memo is unable to trace the funds to the extent required for summary judgment. *Id.* at 9–12. Memo responds that the bankruptcy court correctly interpreted the NCMTA. Appellee's Br. 8–11. Memo argues that tracing is unnecessary because the NCMTA (like the PACA) creates a floating trust, and the statute is therefore dispositive. *See id.* at 11. However, Memo contends that even if the court concludes that tracing is necessary, summary judgment in Memo's favor is still appropriate because it can properly trace all the funds. *See id.* at 15–20. Finally, Memo argues that equitable estoppel is not warranted. *Id.* at 14–15.

## II.

■ The court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a). On appeal, this court reviews the bankruptcy court's factual findings for clear error, but reviews its conclusions of law de novo. *E.g., In re Baltimore Marine Indus., Inc.,* 476 F.3d 238, 240 (4th Cir.2007). Summary judgment is appropriate only where there are no disputed issues of material fact such that the moving party is entitled to judgment as a matter of law. *See, e.g.,* Fed.R.Civ.P. 56(c) (2007); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the court must review the bankruptcy court's legal conclusions de novo and determine de novo whether there exist any disputed issues of material fact.

## III.

■ Funds held in trust at the time that the petition is filed are not part of the

bankruptcy estate. *See, e.g.,* 11 U.S.C. § 541(d) (providing that where the debtor holds "only legal title and not an equitable interest" in property, such equitable interest does not become part of the bankruptcy estate); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ("Congress plainly excluded [from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the petition."). State law generally determines whether a trust exists. *See, e.g., Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."); *Dameron,* 155 F.3d at 722 ("Our consideration of what constitutes an 'equitable interest' subject to exclusion from the bankruptcy estate under § 541(d) is a question of state law."); *Am. Bankers Ins. Co. v. Maness,* 101 F.3d 358, 363 (4th Cir.1996) ("To summarize then, while federal law creates the bankruptcy estate, ... state law, absent a countervailing federal interest, determines whether a given property falls within this federal framework."). Therefore, the bankruptcy court correctly held that the NCMTA governs the state law question of whether the funds were impressed with a trust.

■ However, the Fourth Circuit has made clear that "tracing is an issue of federal rather than state law." *Dameron,* 155 F.3d at 723; *accord In re Alamance Knit Fabrics, Inc.,* 251 B.R. 293, 295 (M.D.N.C.1999). The Fourth Circuit's conclusion is consistent with other circuit courts. *See In re Goldberg,* 932 F.2d 273, 280 (3d Cir.1991) (claimant must show the existence of a trust and must also show that it can trace the trust funds; the tracing requirement derives solely from federal law); *Conn. Gen. Life Ins. Co. v. Uni-*

*versal Ins. Co.,* 838 F.2d 612, 618 (1st Cir.1988) ("[The tracing requirement], because it pertains to distribution of assets from an entity in federal bankruptcy procedings [sic], is exclusively a question of federal law."); *In re Bullion Reserve of N. Am.,* 836 F.2d 1214, 1218 (9th Cir.1988) ("Moreover, even if an express trust were created, [the claimant] would still have a duty under federal bankruptcy law to trace his funds to the bullion he received. Such a tracing requirement is necessary to further the Bankruptcy Code's policy of equal distribution among similarly situated creditors."); *In re Kennedy & Cohen, Inc.,* 612 F.2d 963, 966 (5th Cir.1980) (per curiam) ("Under federal law, plaintiffs must be able to trace their funds to an identifiable trust in the hands of the trustee.").

■ Here, the bankruptcy court held that the disputed issues of fact regarding tracing were immaterial, and that summary judgment was appropriate, because the NCMTA eliminates the need for a tracing analysis by creating a floating trust. *See* Tr. of Hr'g 26. However, the North Carolina legislature cannot alter a federal tracing requirement. *See, e.g.,* U.S. Const, art. VI; *Dameron,* 155 F.3d at 722. Even if the NCMTA establishes a floating trust as the bankruptcy court held, the floating nature of the trust conflicts with federal law and is preempted. *See* U.S. Const. art. VI; *English v. Gen. Elec. Co.,* 496 U.S. 72, 78–80, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (describing various forms of federal preemption, including conflict preemption where state law stands as an obstacle to accomplishing and executing the objectives of Congress). Nor can the floating nature of the trust overcome the federal tracing requirement under the guise of being a state definition of a property interest. *See, e.g., Dameron,* 155 F.3d at 722. State law only supplies the property definition "absent a countervail-

ing federal interest." *See, e.g., Maness,* 101 F.3d at 363. Here, the federal tracing requirement promotes the "countervailing federal interest" mentioned in *Maness—* "the Bankruptcy Code's policy of equal distribution among similarly situated creditors." *Bullion Reserve,* 836 F.2d at 1218; *see Dameron,* 155 F.3d at 722: *Maness,* 101 F.3d at 363. Accordingly, the bankruptcy court erred when it concluded that the NCMTA eliminates the federally-mandated tracing analysis, and the decision below granting summary judgment to Memo is vacated.[2]

## IV.

The parties invite the court to enter summary judgment in their respective favor on grounds that the bankruptcy court did not address. Memo argues that, assuming that federal law requires tracing, the court should affirm summary judgment in its favor because Memo can properly trace nearly all of the funds in question. *See* Appellee's Br. 15–20. Callaway responds with an entirely different theory of tracing and contends that Memo can at best trace only a portion of the disputed funds. *See* Appellant's Br. 9–12. The bankruptcy court described the tracing is-

sue as "rather difficult," and declined to address it. *See* Tr. of Hr'g 27.

Similarly, Callaway contends that summary judgment in his favor is appropriate because Memo should be equitably estopped from asserting any claim to the disputed funds on the ground that Memo's audit of IGA provided Memo with constructive knowledge that IGA was commingling funds. *See* Appellant's Br. 8–9. Memo counters that Callaway has produced no evidence that Memo actually knew of IGA's misdeeds, and that Callaway's equitable estoppel argument is based purely on speculation. *See* Appellee's Br. 14–15. The bankruptcy court also declined to address the estoppel issue. *See* Tr. of Hr'g 26–27.

The court declines to address either of these issues without the benefit of the bankruptcy court's analysis. *See, e.g., Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("It is the general rule ... that a federal appellate court does not consider an issue not passed upon below."); *French v. Assurance Co. of Am.,* 448 F.3d 693, 707 (4th Cir.2006) (same). Accordingly, on remand, the bankruptcy court shall address the tracing issue and the estoppel issue.

---

**2.** At oral argument, Memo cited *In re Cambridge Mortgage Corp.,* 92 B.R. 145 (Bankr. D.S.C.1988). According to Memo, *Cambridge* indicates that no tracing analysis is necessary where the disputed funds are found in a bank account which was set up to hold trust funds. However, *Cambridge* does not so hold. The court in *Cambridge* held that tracing was satisfied, not unnecessary. *See id.* at 151 ("The court finds that [the trust fund claimant] has sufficiently demonstrated that it can trace payments....."); *id.* at 152 ("[The trust fund claimant] has sufficiently traced the deposits....."). Moreover, *Cambridge* arose on significantly different facts. In *Cambridge,* the trust funds went from one large "collecting pool" trust account into a smaller individual trust account. *See* 92 B.R. at 147. Here, the funds went into the General Operating Ac-

count, where they were mixed with non-trust funds, and then into the Money Order Account. *See* Bankr.Order 4. The trust funds in *Cambridge* were never mixed with non-trust funds, and there was no genuine dispute in *Cambridge* that the funds were anything other than trust funds in nature. *See* 92 B.R. at 152 ("The Trustee presented no evidence or testimony to the contrary.").

At bottom, Memo's argument from *Cambridge* depends on the assumption that the disputed funds are necessarily trust funds because they were found in an account set up to hold trust funds. Water does not become wine simply because it is placed into a wine bottle, and the label on the Money Order Account does not relieve Memo of the federally-mandated tracing analysis.

The parties noted at oral argument that the bankruptcy court's holding on the NCMTA issue impacted its holdings on other issues in the case. For example, the bankruptcy court issued a personal judgment against Russell Davis, "representing the remainder of the funds owed to [Memo] after the trustee seized funds from the Money Order Account." Bankr.Order 13–14. Because the bankruptcy court's other holdings are in part dependent on its NCMTA holding, the court vacates the bankruptcy court's judgment in full.

V.

The judgment below is VACATED. The action is REMANDED to the United States Bankruptcy Court for the Eastern District of North Carolina for further proceedings consistent with this order.

SO ORDERED.